# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK
## No.  1:17-cv-08538-LTS

ROGER DEAN GILLISPIE,

        Appellant,

vs.

GENERAL MOTORS LLC, and
WILMINGTON TRUST
COMPANY, *as Trustee for and
Administrator of the Motors
Liquidation Company General
Unsecured Creditors Trust,*

        Appellees.

Judge Laura T. Swain

**APELLANT ROGER DEAN
GILLISPIE'S OPENING
BRIEF ON APPEAL**

---

Appeal from the United States Bankruptcy Court
for the Southern District of New York
Case No. 09-50026 (MG); *In re Motors Liquidation Company*
- Judge Martin Glenn

---

Mike Kanovitz
David B. Owens
LOEVY & LOEVY
311 North Aberdeen St., 3FL
Chicago, IL 60607
(312) 243-5900
David@loevy.com

# TABLE OF CONTENTS

INTRODUCTION ........................................................................1

ISSUES PRESENTED..................................................................3

FACTUAL AND PROCEDURAL BACKGROUND ..............................................5

    A. The Wrongful Conviction of Mr. Gillispie ..................................4

    B. Gillispie's Civil Rights Suit ..................................10

    C. Procedural Background ..........................................11

STANDARD OF REVIEW .............................................................12

ARGUMENT ........................................................................13

    I.    Mr. Gillispie Is Entitled To Pursue His Civil Rights Claims
        Against New GM........................................................13

        A. Controlling Second Circuit Law Provides That A Claim Requires
           a Right to Payment Underthe Applicable Non-Bankruptcy Law.............15

        B. Gillispie Did Not Have A Pre-Petition Right to Payment and,
           Therefore, He Did Not Have a Bankruptcy "Claim" At
           the Time of the Sale...............................................20

        C. The Weight of Analogous Authority Illustrates that Gillispie
           Should Be Permitted to Pursue His Suit Against New GM ...............24

        D. The Bankruptcy Court's Legal Errors Require Reversal ..............28

        E. Due Process Demands That Gillispie Be Permitted to Pursue
           His Claims Against New GM.........................................33

    II.    At the Very Least, Mr. Gillispie Should Be Able to File a Post-Bar
        Date Proof of Claim in the Old GM Bankruptcy Case ...................35

         A. The Bankruptcy Court Erred in Finding Gillispie Had Not

Satisfied Rule 9006..................................................................................35

B. Due Process Demands Gillispie Have The Opportunity to Pursue
His Claims Against GM ........................................................................41

CONCLUSION ................................................................................................44

# TABLE OF AUTHORITIES

*Amaker v. Weiner*, 179 F.3d 48 (2d Cir. 1999)........................................22

*Armendariz–Mata v. U.S. Dep't of Justice*, 82 F.3d (5th Cir. 1996).......................43

*Atkins v. Cory & Cory (In re Cory)*, 2008 WL 5157515
(W.D. Mo. 2008)........................................26

*Austin v. BFW Liquidation, LLC (In re BFW Liquidation)*, 471 B.R. 654
(N.D. Ala. 2012) ........................................26

*Avellino & Bienes v. M. Frenville Co. (In re Frenville Co.)*, 744 F.2d 332
(3d Cir. 1994)........................................29

*Brunswick Bank & Trust Co. v. Atanasov (In re Atanasov)*, 221 B.R. 113
(D.N.J. 1998)........................................26

*Cameron v. Fogarty*, 806 F.2d 380 (2d Cir. 1986)................................22

*Carroll v. Henry County, Georgia*, 336 B.R. 578 (N.D. Ga. 2006) ......................26

*Cracco v. City of New York*, No. 14 CIV. 8235 PAC, 2015 WL 6738332
(S.D.N.Y. Nov. 4, 2015) ........................................22

*DiBlasio v. City of New York*, 102 F.3d 654 (2d Cir. 1996)................................22

*Epstein v. Off. Com. of Unsecured Creditors of the Est. of Piper Aircraft*,
58 F.3d 1573 (11th Cir.1995) ........................................27

*Epstein v. Off. Com. of (In re Flynn)*, 402 B.R. 437 (1st Cir. BAP 2009) .............27

*General Motors LLC v. Elliott (In Re Motors Liquidation Co.)*, 829 F.3d 135
(2d Cir. 2016)........................................12, 15, 16, 20

*Gilbert v. Homar,* 520 U.S. 924 (1997)................................34

*Gillispie v. Miami Township, et al.,* 13cv416 (S.D. Ohio) (Rose, J.)................1, 10

*Gillispie v. Timmerman-Cooper*, 2012 WL 6644624 (S.D. Ohio Dec. 20, 2012) ....9

*Gillispie v. Timmerman-Cooper*, 2013 WL 526481 (S.D. Ohio Feb. 11, 2013).......8

*Gillispie v. Timmerman-Cooper*, 835 F. Supp.2d 482 (S.D. Ohio 2011)..................1

*Gillispie v. Warden, London Correctional Institution*, 771 F.3d 323
(6th Cir. 2014)...............................................................................................9

*Glatzer v. Enron Corp.*, 2008 WL 4449439 (S.D.N.Y. Sept. 29, 2008) .................17

*Hagar v. Reclamation Dist. No. 108* U.S. 701 (1884)..............................................34

*Heck v. Humphre*y, 512 U.S. 477 (1994).........................................................2, 21

*In re 50-Off Stores, Inc*., 22 B.R. 897 (Bankr. W.D. Tex 1998) ...........................36

*In re Applied Theory Corp*., 312 B.R. 223 (Bankr. S.D.N.Y. 2004).................17, 31

*In re Bennett*, 466 B.R. 422 (Bankr. S.D. Ohio 2012)............................................33

*In re Duplan Corp.*, 212 F.3d 144 (2d Cir. 2000) ....................................17, 30, 31

*In re Enron Corp*., 2003 WL 1889042 (Bankr. S.D.N.Y. Apr. 8, 2003) ...............39

*In re General Motors Corp*, 407 B.R. 463 (Bankr. S.D.N.Y. 2009)...............passim

*In re General Motors LLC Ignition Switch Litigation,* 2017 WL 3382071
(S.D.N.Y. Aug. 3, 2017) ............................................................................20

*In re Grumman Olson Indus*. 467 B.R. 694 (S.D.N.Y. 2012) ....................28, 33, 43

*In re Hexcel Corp.*, 239 B.R. 564 (N.D. Cal. 1999)................................................43

*In re Hudson*, 260 B.R. 421 (Bankr. W.D. Mich. 2001) .........................................33

*In re Ionosphere Clubs, Inc.*, 922 F.2d 984 (2d Cir. 1990) .....................................12

*In re Johns–Manville Corp.,* 600 F.3d 135 (2d Cir.2010)...........................28, 33, 42

*In re Lear Corp.*, 2012 WL 443951 (Bankr. S.D.N.Y. Feb. 10, 2012*)* ...................17

*In re Manville Forest Prod. Corp*., 209 F.3d 125 (2d Cir. 2000)............................17

*In re Motors Liquidation Co*., 447 B.R. 198 (Bankr. S.D.N.Y. 2011)....................39

*In re Motors Liquidation Co*., 2013 WL 110545 (S.D.N.Y. Jan. 7, 2013) .............17

*In re National Gypsum Co.*, 139 B.R. 397 (N.D. Tex. 1992)..................................17

*In re Queen Elizabeth Realty Corp.,* No. 13-12335 (SMB),
 2017 WL 1102865 (Bankr. S.D.N.Y. Mar. 24, 2017) ............................................37

*In re Republic Airways Holdings Inc.*, 582 B.R. 278 (S.D.N.Y. 2018)..................13

*In re Taneja*, 2018 WL 1831853 (S.D.N.Y. Apr. 16, 2018)....................................12

*In re Texaco Inc.*, 2011 WL 4526538 (S.D.N.Y. Sept. 28, 2011) ..........................17

*In re Waterman S.S. Corp.*, 157 B.R. 220 (S.D.N.Y. 1993).............................30, 34

*Jenkins v. A.T. Massey Coal Co. (In Re Jenkins)*, 410 B.R. 182
(W.D. Va. 2008)........................................................................................................26

*Johnson v. Mitchell*, 2011 WL 1586069 (E.D. Cal. 2011) .....................................25

*Kane v. Johns–Manville Corp.*, 843 F.2d 636 (2d Cir.1988) .................................44

*Lemelle v. Universal Mfg. Corp.*, 18 F.3d 1268 (5th Cir. 1994) ...........................20

 *LTV Corp. v. Shalala* (*In re Chateaugay Corp.*),
53 F.3d 478 (2d Cir. 1995)..................................................................................passim

*McKithen v. Brown*, 481 F.3d 89 (2d Cir. 2007) ....................................................23

*Memphis, Tennessee Area Local, American Postal Workers Union,
AFL-CIO v. City of Memphis*, 361 F.3d 898 (6th Cir. 2004).....................................1

*Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978).....2, 11

*Morrissey v. Brewer*, 408 U.S. 471 (1972)..............................................................34

*Moses v. Colvin*, 2014 WL 774654 (S.D.N.Y. Feb. 25, 2014)................................37

*Muhammad v. Close*, 540 U.S. 749 (2004)..............................................................22

*Mullane v. Central Hanover Bank & Trust Company*, 339 U.S. 306 (1950)....41, 42

*Ogle v. Fid. & Deposit Co. of Maryland*, 586 F.3d 143 (2d Cir. 2009).................17

*Pennsylvania Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552 (1990)..............16

*Pension Ben. Guar. Corp. v. Oneida Ltd.*, 562 F.3d 154 (2d Cir. 2009)................16

*People v. Boone*, 91 N.E.3d 1194 (NY. App. 2017)...................................................5

*People v. Starks*, 2014 IL App (1st) 121169...............................................................5

*Peralta v. Vasquez*, 467 F.3d 98 (2d Cir. 2006) ......................................................23

*Perry v. New Hampshire*, 565 U.S. 228 (2012)..........................................................5

*Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380 (1993) .....36

*In re Johns–Manville Corp.*, 600 F.3d 135 (2d Cir. 2010)................................28, 33

*Roundtree v. New York*, 778 F. Supp. 614 (E.D.N.Y. 1991)....................................22

*Smith v. Campbell*, 782 F.3d 93 (2d Cir. 2015) .......................................................21

*State v. Gillispie*, 2012 WL 1264496 (Ohio App. 2 Dist. 2012) ........................1, 8, 9

*State v. Henderson*, 208 N.J. 208 (2011) ...................................................................5

*Stegemann v. Rensselaer Cty. Sheriff's Office*, 648 F. App'x 73 (2d Cir. 2016).....27

*Stone v. Kmart Corp.*, 2007 WL 103959 (M.D. Ala. Mar. 20, 2007) .....................27

*United States v. LTV Corp. (In re Chateaugay Corp.)*, 944 F.3d 9977
(2d Cir. 1991)........................................................................................................passim

*United States v. Minor*, 228 F.3d 352 (4th Cir. 2000) .............................................43

*Wallace v. Kato*, 549 U.S. 384 (2007) .....................................................................27

*Wilkinson v. Dotson*, 544 U.S. 74 (2005) ................................................................21

*Younger v. City of New York*, 480 F.Supp.2d 723(S.D.N.Y. 2007*)* .......................22

*Zinermon v. Burch,* 494 U.S. 113 (1990)..................................................................34

## Statutes

11 U.S.C. § 101(5) ....................................................................................................16

11 U.S.C. § 363 ................................................................................................... 13

28 U.S.C. § 2254 ................................................................................................... 7

407 B.R. 463 .................................................................................................. 13, 15

42 U.S.C. § 1983 .......................................................................................... 4, 10, 21

FED. R. BANKR. P. 9006(b)(1) .............................................................................. 36

## Other Authorities

Brendan Keefe, *Dean Gillispie Released from Prison after Serving 20 Years* (Dec. 21, 2011)......................................................................................................... 7

Laura A. Bischoff, *Gillispie Case Illustrates Imperfect Justice* System, DAYTON DAILY NEWS (Jan 7, 2012) ..................................................................................... 7

## INTRODUCTION

In 1991, Dean Gillispie was wrongfully convicted in Ohio of crimes he did not commit. Gillispie's wrongful conviction was overturned in separate decisions issued in 2011 and 2012—both well after the 2009 bankruptcy proceedings for General Motors had concluded. *Gillispie v. Timmerman-Cooper*, 835 F. Supp.2d 482 (S.D. Ohio 2011); *State v. Gillispie*, 2012 WL 1264496 (Ohio App. 2 Dist. 2012).

Gillispie then diligently filed an action under 42 U.S.C. §1983 concerning his wrongful incarceration. *See Gillispie v. Miami Township, et al.,* 13cv416 (S.D. Ohio) (Rose, J.); First Amended Complaint, No. 09-50026, Doc. 12727-1. Named as defendants in that suit are former employees of General Motors, where Gillispie worked before his wrongful conviction, as well as General Motors itself. The lawsuit seeks damages due to Gillispie's wrongful conviction, which was the result of misconduct by the police officers who investigated the case. Gillispie has further alleged that his wrongful conviction was the result not just of police misconduct but also by the unlawful actions of former high-level, supervising GM employees who worked with police officers to falsely implicate him in the crimes. *Cf. Memphis, Tennessee Area Local,*

1

*American Postal Workers Union, AFL-CIO v. City of Memphis*, 361 F.3d 898, 905 (6th Cir. 2004) ("Private persons may be held liable under § 1983 if they willfully participate in joint action with state agents."). As a consequence—and in light of their obligations as an indemnitor, via *respondeat superior,* and under *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978)—Gillispie sued General Motors in both its capacities as New GM and Old GM.[1]

Given the bankruptcy proceedings happened during Gillispie's over 20 years of wrongful imprisonment, he sought a determination of whether Old GM, New GM, or both were proper parties to the civil-rights action. Shockingly, the Bankruptcy Court below determined that Gillispie is not allowed to even bring (let alone prove) his wrongful-conviction claims against *either* entity. This decision was erroneous.

Under prevailing law, Gillispie is entitled to bring his claims against New GM. Gillispie did not have a "claim" within the meaning of the Bankruptcy Code until after his conviction was overturned, *see Heck*

---

[1] For ease, Gillispie refers to "New GM" and "Old GM" throughout. As a technical matter, the interests of Old GM are actually represented by the Motors Liquidation Company General Unsecured Creditors Trust, via the Wilmington Trust Company, which administers the remainder of the GM assets that existed after the bankruptcy sale.

*v. Humphrey*, 512 U.S. 477 (1994). Accordingly, his interests could not have been discharged in the bankruptcy proceedings because he had no right to payment while he stood wrongfully convicted. *LTV Corp. v. Shalala* (*In re Chateaugay Corp.*), 53 F.3d 478, 497 (2d Cir. 1995).

At a minimum, and in the alternative, Gillispie should be allowed to name Old GM as a defendant in his civil-rights suit. Gillispie has not shown any "neglect" and, even assuming he had, any such delay would be excusable. Gillispie had good reason for not filing a proof of claim at the time of the bankruptcy closing that took place years before his exoneration: he was wrongfully convicted, in prison, and his claims had yet to accrue.

Gillispie respectfully asks that the Order of the Bankruptcy Court be reversed and that he be allowed to pursue his claims against New GM, or, in the alternative, the estate of Old GM.

## ISSUES PRESENTED

The issues presented on this bankruptcy appeal are:

1. Whether the Bankruptcy Court erred by concluding that during the period of his wrongful conviction in 2009, Mr. Gillispie had a "claim" under Bankruptcy Code even though he could not have

3

brought a civil rights action under 42 U.S.C. § 1983 while his conviction remained extant?

2. Whether the Bankruptcy Court erred by disregarding clear, binding Second Circuit law that provides that for a claim to exist there must be a right to payment  "under the relevant non-bankruptcy law"?

3. Whether precluding Gillispie from pursuing claims against New GM violates due process?

4. Whether Mr. Gillispie should be permitted a post-bar date proof of claim in the Old GM bankruptcy because he has more than amply satisfied the requirements of Federal Rule of Bankruptcy Procedure 9006?

5. Whether precluding Gillispie from pursing his claims against Old GM violates due process?

## FACTUAL AND PROCEDURAL BACKGROUND

### A. The Wrongful Conviction of Mr. Gillispie

In 1991, Mr. Roger Dean Gillispie was wrongfully convicted in the State of Ohio for a series of sexual assaults that took place in 1988, and

that he did not commit. *See* First Amended Complaint ("FAC"), 09-50025, Doc. No. 12727-1.

Gillispie was wrongfully convicted due to eyewitness identification errors—the leading cause of wrongful convictions in the United States. *See Perry v. New Hampshire*, 565 U.S. 228, 244-45 (2012) (citing studies showing that "eyewitness misidentifications are the leading cause of wrongful convictions," an nothing that the Court does not "doubt either the importance or fallibility of eyewitness identifications"); *People v. Boone*, 91 N.E.3d 1194, 1198 (NY. App. 2017) ("Mistaken eyewitness identifications are "the single greatest cause of wrongful convictions in this country," "responsible for more ... wrongful convictions than all other causes combined." (citations and internal quotation marks omitted)); *State v. Henderson*, 208 N.J. 208, 231 (2011) (acknowledging that "[m]isidentification is widely recognized as the single greatest cause of wrongful convictions in this country" (internal quotation marks and citation omitted)); *People v. Starks*, 2014 IL App (1st) 121169, ¶ 85 ("Empirical evidence reveals eyewitness identification to be the single greatest cause of wrongful convictions in this country." (Hyman, J., concurring) (citations and internal quotation marks omitted)).

Indeed, the only evidence mustered against Gillispie were intentionally fabricated identifications generated several years after the crimes had occurred. These identifications were based upon a grossly flawed set of photo arrays and other witness manipulation by a new, young officer had been assigned to the case; and made only after General Motors employees previously employed with Gillispie worked with the new officer to falsely implicate Gillispie in the crimes. FAC, 09-50025, Doc. No. 12727-1, ¶¶43-54. Indeed, Gillispie was only arrested after having been previously cleared by two seasoned police officers who investigated the GM supervisor's prior attempt to falsely finger Gillispie. *Id.* ¶¶36-42. The reason Gillispie was a suspect in the first place (and again after being cleared) was due to his former supervisors at General Motors falsely implicating him in the crime by claiming he "looked like" a composite that had allegedly been up at a GM plant for years after the crime. *Id.* ¶¶43-54.

Gillispie has consistently maintained his innocence and pursued every available avenue for obtaining post-conviction relief he could

seek.[2] As this Court is aware, such a pursuit is no easy task. Nonetheless, through his representation by the Ohio Innocence Project, Mr. Gillispie was ultimately able to have his conviction overturned in *two* separate courts and on two separate grounds.

The first court to call Gillispie's conviction into question was a federal district court who, applying the strictures of 28 U.S.C. § 2254, found that exculpatory evidence had been withheld from Gillispie. *Gillispie v. Timmerman–Cooper*, 835 F.Supp.2d 482 (S.D. Ohio 2011). Among other things, that evidence showed significant discrepancies between Gillespie's physical stature and appearance and that of the perpetrators. *Id.* at 500, 506-08. The suppressed evidence illustrated that he could *not* have been the perpetrator. Indeed, Gillispie's post-conviction claims were remarkable: the two prior Miami Township police officers who originally investigated the crimes submitted

---

[2] The problems with Gillispie's case have been widely reported. *See, e.g.*, Laura A. Bischoff, *Gillispie Case Illustrates Imperfect Justice* System, DAYTON DAILY NEWS (Jan 7, 2012), *available at* https://www.daytondailynews.com/news/local/gillispie-case-illustrates-imperfect-justice-system/Lebp7ngu6D0JZtcu89ZnyH/.; Brendan Keefe, *Dean Gillispie Released from Prison after Serving 20 Years* (Dec. 21, 2011), WCPO.com, *available at* https://www.wcpo.com/news/local-news/i-team/last-christmas-in-prison-for-man-who-says-he-was-wrongfully-convicted.

declarations and sworn testimony in support of his post-conviction

claims. *Id.* at 499-500, 507-08.They reported how Gillispie became a

suspect—though his former supervisor at GM—and the steps they

documented in their police reports that illustrated Gillispie was not the

perpetrator, let alone a suspect. *Id.* Those two police officers

subsequently left the department and a new detective, years after the

crimes, began investigating the case, and began his own case file by

implicating Gillispie through conversations with Gillispie's former

colleagues at GM. The original reports exculpating Gillispie were never

turned over to his defense team or produced at all. Accordingly, the

Court found that the original reports exculpating Gillispie were obvious

*Brady* material that had been suppressed and must be produced. *Id.*

In addition, in 2012, an Ohio court overturned Gillispie's

conviction due to the discovery and emergence of an alternative

suspect—the likely perpetrator—of the crimes. *See generally State v.*

*Gillispie*, 2012 WL 1264496 (Ohio App. 2 Dist. 2012).[3]

---

[3] After the Ohio appellate court also vacated Gillispie's conviction on
separate grounds, the State dismissed its appeal of the federal court's
habeas grant on *Brady* grounds. *See Gillispie v. Timmerman-Cooper*,
2013 WL 526481, at *1 (S.D. Ohio Feb. 11, 2013).

Despite the fact that it was clear Gillispie should not have even been a suspect, that could not have been the perpetrator, and the existence of evidence pointing to the true perpetrator, Gillispie's criminal-court odyssey did not end even after two courts had called his conviction into question. Instead, legal wrangling continued in both state and federal court for after both of these decisions were entered, with two appeals in the Sixth Circuit, and separate litigation before the Ohio trial court and then on appeal. *See generally State v. Gillispie*, 2016-Ohio-7688 (2d. App. 2016) (describing the procedural posture); *see also Gillispie v. Warden, London Correctional Institution*, 771 F.3d 323 (6th Cir. 2014) (affirming denial of the State's motion to vacate the *Brady* order); *Gillispie v. Timmerman-Cooper*, 2012 WL 6644624, at *1 (S.D. Ohio Dec. 20, 2012) (denying State's motion to vacate and describing the procedural history of the case).

The indictment against Gillispie was finally dismissed after the State of Ohio admitted it could not produce the *Brady* material. That decision was affirmed on appeal. *State v. Gillispie*, 2016-Ohio-7688 (2d. App. 2016). The dismissal of charges became final in 2017. *See* No. 09-50026, Doc. 14052.

9

## B. Gillispie's Civil Rights Suit

In the meantime, in 2013, Gilispie brought an action under 42 U.S.C. § 1983 alleging that his wrongful conviction involved numerous violations of his constitutional rights. *Gillispie v. Miami Township, et al.*, 13cv416, (S.D. Ohio) (Rose, J.); FAC, 09-40026, Doc. 12727-1. In addition to police officers and a municipality, Gillispie brought suit against his former colleagues at General Motors, who Gillspie alleges conspired with the police officers to falsely and maliciously prosecute him. *See* FAC, 09-40026, Doc. 12727-1, at ¶¶29-35, 34-54, & 62-65. The aim of the suit is summarized in its first paragraph:

> Plaintiff, Roger Dean Gillispie, was framed for a series of sexual assaults that he did not commit, and has spent over 20 years incarcerated as an innocent man. Tragically, his conviction was no accident, as his wrongful conviction was the result of police misconduct perpetuated by officers from the Miami Township Police Department. This misconduct included, but was not limited to, witness manipulation; cover-ups; the fabrication, destruction, and suppression of evidence; and perjury. The unlawful conduct was not limited to officers from Miami Township; it included employees of General Motors Corporation who conspired with officers from the Miami Township Police Department to wrongfully convict Mr. Gillispie. Plaintiff's wrongful incarceration was extended when, in violation of his rights, agents of the Montgomery County—employees of the Miami Valley Regional Crime Laboratory—and employees of Miami Township discarded forensic evidence.

*Id.* at ¶1.

As for legal claims, in addition to bringing *Brady* and other due process claims, Gillispie has alleged that he was maliciously prosecuted in violation of federal law. Gillispie also alleges that GM is liable in his civil suit due to the fact that it can be liable for the conduct of its employees through the doctrine of *respondeat superior*; because it has a duty to indemnify its employees named in the suit; and that it is liable *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978). *See, e.g.* FAC, 09-40026, Doc. 12727-1, at ¶¶97-103.

## C. Procedural Background

Soon after GM was served in the Southern District of Ohio, they sent Gillispie a cease and desist order, arguing that whether any version of General Motors could even be a defendant had to addressed by the Bankruptcy Court in the context of the Motors Liquidation Company bankruptcy. Gillispie then filed a Motion for Leave to Pursue Claims Against General Motors LLC, and, Alternatively, to File a Post-Bar Date Proof Of Claim in the Motors Liquidation Company Bankruptcy. *Motion*, 09-50026, Doc. 12727.

11

After the initial briefing was completed, the Second Circuit decided *General Motors LLC v. Elliott (In Re Motors Liquidation Co.)*, 829 F.3d 135, 156 (2d Cir. 2016), which addressed the GM bankruptcy in substantial detail. Gillispie specifically anticipated a hearing on the motion, and the opportunity to address *Elliot* in oral argument before the Bankruptcy Court. Letter, 09-50026, Doc. 14052. In the end, however, the Bankruptcy Court denied Gillispie's claim without a hearing of any sort. *Order*, 09-50026, Doc. No. 14133 ("Order"). This appeal timely followed.

## STANDARD OF REVIEW

As a general matter, a district court reviews a bankruptcy court's conclusions of law *de novo* and its findings of fact for clear error. *In re Taneja*, 2018 WL 1831853, at *2 (S.D.N.Y. Apr. 16, 2018) (citing *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 988 (2d Cir. 1990)). In this case, the court below did not hear any live evidence or witnesses. Nor was there any sort of evidentiary fact-finding, discovery, or a hearing. Accordingly, the opinion below should be viewed as involving legal determinations alone and reviewed *de novo* rather than under any deferential standard. To the extent the court below made any sort of

12

factual determinations they were mixed questions of fact and law, also subject to *de novo* review. *See In re Republic Airways Holdings Inc.*, 582 B.R. 278, 281 (S.D.N.Y. 2018) ("Questions of law and mixed questions of law and fact are generally subject to de novo review.").

## ARGUMENT

### I.   Mr. Gillispie Is Entitled To Pursue His Civil Rights Claims Against New GM

Gillispie understands that, pursuant to the 11 U.S.C. § 363 proceedings and the "free and clear" sale of assets to New GM, Old GM was able to discharge in bankruptcy a great number of potential claims that might be asserted against it as a successor. That, after all, was one of the primary purposes of the transaction. And, Congress intended the term "claim" to be broad to give some sense of finality to bankruptcy transactions that might be undermined if pre-petition conduct could routinely brought against a successor. Accordingly, a great many cases involving pre-petition conduct are properly discharged under the sale, as the Bankruptcy Court already held. *See generally In re General Motors Corp*, 407 B.R. 463 (Bankr. S.D.N.Y. 2009) (the "*Sale Opinion*").

There are, however, narrow circumstances where courts recognize that certain interests and claims cannot, constitutionally, fall within

13

the wide ambit of the term "claim." *See id.* at 507 (discussing future claimants and noting it would be "constitutionally suspect" to apply the free-and-clear sale against them). This reflects the common sense understanding that the reach of the word "claim" in the statute "is not infinite." *LTV Corp. v. Shalala* (*In re Chateaugay Corp.*), 53 F.3d 478, 497 (2d Cir. 1995) (*Chateaugay II).*

This case presents one of those rare instances where the term "claim" cannot be applied to Gillspie's civil-rights suit against General Motors. At the time of the bankruptcy, Gillispie did not have a right to payment—and there was no constitutionally actionable tort—until after the bankruptcy, owing to the fact that Gillispie's criminal conviction was not overturned until after the bar date. Gillispie could not have brought his § 1983 action until after his conviction was overturned. Given these undisputed facts, Gillispie is like the future claimant who would be absolutely and troublesomely harmed if he is not afforded the opportunity to at least bring his claims. That result should be avoided, and Gillispie should be allowed to pursue his claims against New GM.

14

## A. Controlling Second Circuit Law Provides That A Claim Requires a Right to Payment Underthe Applicable Non-Bankruptcy Law

The GM Bankruptcy has been extensively litigated and described. *See generally Gen. Motors LLC v. Elliott (In Re Motors Liquidation Co.)*, 829 F.3d 135, 156 (2d Cir. 2016) ("*Elliot*"); *In re Motors Liquidation Company*, 2018 WL 2416567, at *1-*9 (May 29, 2018) (describing in extensive detail the GM bankruptcy proceedings); *Sale Opinion*, 407 B.R. 463. Accordingly, and because the intricacies of that process are largely immaterial for the issues in this appeal, they are not discussed in detail here.

The core legal issue in this appeal—whether Gillispie can pursue his claims against New GM—turns on whether he had a "claim," as defined in the Bankruptcy Code and within the limits of the constitution, at the time of the bankruptcy becoming final in 2009. If Gillispie had a "claim," then the "free and clear" provisions of the sale can be enforced against him, and his only potential recourse is against Old GM. However, if Mr. Gillispie did not have a "claim" at the time of the bankruptcy, then his suit—even if based upon pre-petition conduct—could not be discharged in the bankruptcy transaction.

15

Gillispie did *not* have a "claim" at the time of the petition, within the meaning of that term in the Bankruptcy Code. He should be permitted to pursue his claims against New GM.

The Bankruptcy Code defines "claim" broadly—any "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5). Even with this language, the Second Circuit has made clear that a "claim" requires the existence of (1) a right to payment (2) that arose before the filing of the petition. *Elliott*, 829 F.3d at 156 (citing *Pension Ben. Guar. Corp. v. Oneida Ltd.*, 562 F.3d 154, 157 (2d Cir. 2009).

Accordingly, and "[l]ooking to the plain language of the Bankruptcy Code," the Court must "ascertain whether a 'right to payment' existed at the time of" GM's bankruptcy petition. *Chateaugay II*, 53 F.3d at 497. A right to payment is an enforceable obligation, *id.* (citing *Pennsylvania Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552 at 559 (1990). Under established law,

16

> A claim exists *only* if before the filing of the bankruptcy petition, the relationship between the debtor and the creditor contained *all of the elements necessary to give rise to a legal obligation* —a right to payment—*under the relevant non-bankruptcy law*."

*Id.* (citing *In re National Gypsum Co.*, 139 B.R. 397, 405 (N.D. Tex. 1992)) (emphasis added).

The Second Circuit has consistently applied this formulation, from *Chateaugay II*, in determining whether a "claim" exists pre-petition. *See, e.g.*, *Ogle v. Fid. & Deposit Co. of Maryland*, 586 F.3d 143, 146 (2d Cir. 2009); *In re Manville Forest Prod. Corp.*, 209 F.3d 125, 129 (2d Cir. 2000) (citing *Chateaugay II*, and noting a claim will only exist where all of the elements necessary to give rise to a legal obligation, a right to payment, existed under the "relevant non-bankruptcy law"); *In re Duplan Corp.*, 212 F.3d 144, 151 (2d Cir. 2000). Courts in this district have applied this legal test as well. *See, e.g.*, *In re Motors Liquidation Co.*, 2013 WL 110545, at *2 (S.D.N.Y. Jan. 7, 2013); *In re Texaco Inc.*, 2011 WL 4526538, at *4 (S.D.N.Y. Sept. 28, 2011); *Glatzer v. Enron Corp.*, 2008 WL 4449439, at *5 (S.D.N.Y. Sept. 29, 2008).[4]

---

[4] It is beyond well-established that *Chateaguy* is the leading case in this Circuit regarding the Bankruptcy Codes' definition of a "claim." *See, e.g., In re Lear Corp.*, 2012 WL 443951, at *7 (Bankr. S.D.N.Y. Feb. 10,

The foregoing rule places important limits on the broad definition of the term "claim" used in the statute. Indeed, the Second Circuit and other lower courts have recognized an important need to put a limit on the definition of a "claim" in to avoid constitutional problems. One of the earliest cases to recognize this issue was *Chateaugay I*, but in that instance that Court did not have to "decide how the definition of 'claim' applies to tort victims injured by pre-petition conduct." *United States v. LTV Corp. (In re Chateaugay Corp.)*, 944 F.2d 997, 1003 (2d Cir. 1991) (*Chateaugay I*) (emphasis added). In so doing, the Court hypothesized the "extreme case" where "pre-petition conduct that has not yet resulted in any tortious consequence to a victim," and recognized it would be problematic to find that such a claim was discharged by a bankruptcy proceeding where, given the circumstances, no amount of notice could have alerted the future claimant of the need to file a claim because of the nature of the future claim.

In *Elliot*, the only Second Circuit case to date that address the GM bankruptcy substantively, the court again recognized the importance of

---

2012*); In re Applied Theory Corp.*, 312 B.R. 223, 246 n.87 (Bankr. S.D.N.Y. 2004).

these concerns and placing a limit on the notion of a "claim" in the

bankruptcy context. *Elliot*, 829 F.3d 135. The Court explained:

> This Court has not decided . . . 'the difficult case of pre-
> petition conduct that has not yet resulted in detectable
> injury, much less the extreme case of pre-petition conduct
> that has not yet resulted in any tortious consequence to a
> victim.' Examples readily come to mind: . . . a hypothetical
> bankrupt bridge building company, which could predict that
> out of the 10,000 bridges it built, one would one day fail,
> causing deaths and other injuries,' because if such a
> (hypothetical) bridge were to "fail, the individuals might
> have tort claims resulting from pre-petition conduct, namely
> the building of the bridge.'

*Id.* at 156 (quoting *Chateaugay I*, 944 F.2d at 1003-04).

The reason the Court was worried about these sorts of potential

situations was because, regardless of how broadly language can be

interpreted, there are problems with interpreting the Bankruptcy Code

in such a manner that would prevent every conceivable claim based

upon pre-petition conduct when individuals would not have been

entitled to file a proof of claim in the bankruptcy.

Thus, in the context of this very bankruptcy proceeding, *Elliot*

emphasized that the Second Circuit "recognizes" that precluding future

tort claimants "would engender enormous practical and perhaps

constitutional problems," meaning that "'claim' cannot be extended to

19

include . . . claimants whom the record indicates were completely

unknown and unidentified at the time [the debtor] filed its petition and

whose rights depended entirely on the fortuity of future occurrences."

*Id.* (citing *Lemelle v. Universal Mfg. Corp.*, 18 F.3d 1268, 1277 (5th Cir.

1994), and *Chateaugay II*, 53 F.3d at 497 (for the proposition that  in

"common sense," "claim" is "not infinite")); *see also In re General Motors*

*LLC Ignition Switch Litigation,* 2017 WL 3382071, at *5 (S.D.N.Y. Aug.

3, 2017) (refusing to apply the term claim so broadly to prevent a claim

where "the party asserting a claim . . . could not have brought[] that

claim prior to the bankruptcy").[5]

## B. Gillispie Did Not Have A Pre-Petition Right to Payment and, Therefore, He Did Not Have a Bankruptcy "Claim" At the Time of the Sale

Gillispie's §1983 claims are premised upon seeking damages

related to his *wrongful* conviction and incarceration due to the fact that

he is innocent and seeks redress for the decades of harm he suffered.

---

[5] The Bankruptcy Court also previously acknowledged that due process demands different treatment for future claims holders. *Sale Opinion*, 407 B.R. at 506. Future claims holders were defined as (1) claimants who were not previously able to file a claim at the time of the sale or bankruptcy, who therefore had no notice that such a claim needed to be filed; and (2) claimants whose interests were not yet "claims" as defined in the bankruptcy code. *Id.*

*See, e.g.*, FAC, 09-50026, Doc. 12727-1, ¶1. As explained above, in order for this lawsuit to have been a "claim" that arose prepetition: "all of the elements necessary to give rise to a legal obligation—a right to payment—under the relevant non-bankruptcy law had to exist at the time of the bankruptcy proceedings." *Chateaugay II*, 53 F.3d at 497.

It is undisputed that, at the time of the petition, Gillispie had right to payment under the relevant bankruptcy law—the law applicable to 42 U.S.C. § 1983, and the rule of *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). In *Heck*, the Supreme Court held:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

512 U.S. at 486-87; *see also Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005).

*Heck* thus bars claims based upon an unlawful conviction or imprisonment until that conviction is overturned; the claims do not "come into existence" until an extant conviction is overturned or otherwise declared invalid. *Cf. Smith v. Campbell*, 782 F.3d 93, 100-01

21

(2d Cir. 2015) (describing *Heck*'s bar as preventing accrual of a constitutional tort where there was an "extant criminal conviction"). Indeed, *Heck* is frequently invoked as a reason to bar and prevent § 1983 claims based upon wrongful imprisonment when there is an extant conviction. *See, e.g.*, *Amaker v. Weiner*, 179 F.3d 48, 51 (2d Cir. 1999) (applying *Heck* to a *Brady* claim); *DiBlasio v. City of New York*, 102 F.3d 654, 657-59 (2d Cir. 1996); *Cracco v. City of New York* 2015 WL 6738332, at *3 (S.D.N.Y. Nov. 4, 2015) (finding claim barred because there was no evidence the plaintiff's claim had "been overturned or otherwise invalidated," meaning "*Heck* thus bars the claim") (citing *Younger v. City of New York*, 480 F.Supp.2d 723, 730 (S.D.N.Y. 2007*), Roundtree v. New York*, 778 F. Supp. 614, 619 (E.D.N.Y. 1991), and *Cameron v. Fogarty*, 806 F.2d 380, 387 (2d Cir. 1986).

Put differently, the "favorable termination" requirement for § 1983 claims related to wrongful incarceration thus prevented Gillispie from having constitutional claims related to his trial and conviction until his conviction was overturned. *See, e.g.*, *Muhammad v. Close*, 540 U.S. 749, 751, (2004) ("In *Heck* [], we held that where success in a

22

prisoner's § 1983 damages action would implicitly question the validity of conviction or duration of sentence, the litigant must first achieve favorable termination of his available state, or federal habeas, opportunities to challenge the underlying conviction or sentence."); *McKithen v. Brown*, 481 F.3d 89, 101 n. 13 (2d Cir. 2007) ("Because the standard enunciated in *Heck* generally bars a § 1983 suit that "necessarily demonstrates" the invalidity of a conviction or sentence "unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated," *Heck*, 512 U.S. at 487, the *Heck* rule has come to be known as the "favorable termination" requirement." (citing *Peralta v. Vasquez*, 467 F.3d 98 (2d Cir. 2006)).[6]

Here, the orders overturning Gillispie's conviction were not issued until 2011 and 2012 (and became final at even later dates). The Bankruptcy petition was filed in 2009, and the bar date came and went in 2009 soon after. Gillispie did not have a "claim" at that time of the bankruptcy petition or claims period; he did not have an even arguable

---

[6] Though derived out of a need to allocate claims between *habeas corpus* and civil litigation, applying the rationale of *Heck* in the bankruptcy contexts makes equal sense, too. In terms of bankruptcy, *Heck* provides that a Plaintiff cannot possibly have a right to payment or assert a tort based upon the idea of a wrongful conviction while they are convicted.

23

"right to payment," as required under *Chateaguy II* and subsequent cases. Nor did Gillispie have any indication that he would prevail in his post-conviction litigation. For the purposes of the bankruptcy proceedings, therefore, Gillispie was "unidentified at the time [GM] filed its petition and [his] rights depended entirely on the fortuity of future occurrences." *Elliott*, 829 F.3d at 156. As such, his claim against GM could not have been discharged in the bankruptcy. *Id.*

### C. The Weight of Analogous Authority Illustrates that Gillispie Should Be Permitted to Pursue His Suit Against New GM.

The overwhelming majority of courts to consider a situation analogous to the one here—where a wrongfully convicted individual was imprisoned at the time of the petition and later had their criminal proceedings resolve in their favor post-petition—have allowed those individuals to pursue their wrongful incarceration and malicious prosecution claims against the successor, rejecting arguments that such suits could be discharged as "claims" in bankruptcy.

For example, in *Johnson v. Mitchell*, the court explained that "the element of termination in plaintiff's favor is of paramount importance to a malicious prosecution claim, and the claim would not exist without

24

this primary predicate," and that because the "predicate" requirement occurred after the bankruptcy filing, "plaintiff's malicious prosecution claims [we]re not part of the bankruptcy estate." 2011 WL 1586069, at *7-*8 (E.D. Cal. 2011). The same conclusion was reached in *Jenkins v. A.T. Massey Coal Co. (In Re Jenkins)*, 410 B.R. 182 (W.D. Va. 2008). There, as here, the claimant sought to pursue a malicious prosecution claim where the criminal prosecution had not terminated in favor of the plaintiff until after the bankruptcy commenced. *Id.* at 185. In light of that fact, *Jenkins* held that even though all of the defendants' alleged misconduct took place pre-petition, a vital element of malicious prosecution (termination in the favor of the plaintiff) did not occur until post-petition. *Id.* at 193. Because of this, the malicious prosecution claim was not property of the bankruptcy estate and could be pursued. *Id.* In other words, *Jenkins* held that the fact that the "right to bring the claim" was not in existence at the time of filing—the criminal case had not resolved in the plaintiff's favor—meant that the malicious prosecution was not property of the bankruptcy estate).

Across the country, courts have reached the same conclusion nearly every single time this issue has been raised. *See Austin v. BFW*

25

*Liquidation, LLC (In re BFW Liquidation)*, 471 B.R. 654, 667 (N.D. Ala. 2012) (holding that where a criminal action against the plaintiff did not conclude in the plaintiff's favor until after the debtor's plan was confirmed, that the plaintiff's "malicious prosecution action accrued … post-confirmation" and was not, therefore, "discharged by confirmation of the debtor's plan"); *Carroll v. Henry County, Georgia*, 336 B.R. 578, 584-85 (N.D. Ga. 2006)(discussing *Heck*, and concluding that the Plaintiff "had no section 1983 claim until the conclusion of his trial, when the jury found him not guilty of the charges against him," and that "[b]ecause the jury verdict occurred after the filing of the bankruptcy petition, the plaintiff had no section 1983 claims at the time of commencement of [the bankruptcy] case"); *Brunswick Bank & Trust Co. v. Atanasov (In re Atanasov)*, 221 B.R. 113, 116-18 (D.N.J. 1998) (debtor's malicious prosecution claim was not property of estate as it arose post-petition when indictment was dismissed); *cf. Atkins v. Cory & Cory (In re Cory)*, 2008 WL 5157515, at *1 (W.D. Mo. 2008) ("The Debtors concede that the criminal action against Ms. Atkins at issue in the state court malicious prosecution action was dismissed after the Debtors filed their Chapter 7 bankruptcy petition. Therefore, the

26

Plaintiff's malicious prosecution action accrued post-petition. As a post-petition claim, it is not subject to the Debtors' discharge.").

    This Court should reach the same conclusion as these courts. [7]

---

[7] The Bankruptcy Court reached the opposite conclusion by relying upon an outlier opinion that is distinguishable at any rate. *See* Order, at 14 (citing *Stone v. Kmart Corp.*, 2007 WL 103959 (M.D. Ala. Mar. 20, 2007)). Aside from the court below, *Stone* is the only decision Gillispie is aware of that has found that a claim with a favorable termination requirement that took place post-petition based upon pre-petition conduct was subject to discharge in the bankruptcy estate. Aside from being on its own, there are key differences between *Stone* and this matter. First, because the plaintiff in *Stone* was never tried or convicted, *Heck* never applied to bar the plaintiff's claims, as *Heck* did for more than 20 years with respect to Gillispie. *See Wallace v. Kato*, 549 U.S. 384, 393 (2007) (explaining that *Heck* only applies to an "extant conviction" and not "anticipated future convictions"); *Stegemann v. Rensselaer Cty. Sheriff's Office*, 648 F. App'x 73, 76 (2d Cir. 2016) ("*Heck* bars a § 1983 claim based on an extant conviction, but it has no application to an anticipated future conviction."). Second, and related, the claims advanced in Gillispie's § 1983 suit are primarily federal due process claims (like his *Brady* claim that is consistent with the grant of *habeas corpus*), in addition to malicious prosecution, that were barred by *Heck* on their own right and without regard to the "elements" of the claim. Third, *Stone* was purportedly applying Eleventh Circuit law, *Epstein v. Off. Com. of Unsecured Creditors of the Est. of Piper Aircraft*, 58 F.3d 1573, 1576 (11th Cir.1995), not *Chateaugay II* and the binding precedent in this Circuit. Fourth, as is evident from the uniformity of the other of cases within the Eleventh Circuit that have reached the opposite result, *e.g.*, *Austin*, 471 B.R. at 667, *Stone* is an outlier even in that jurisdiction. The weight of authority suggests that it was error for the bankruptcy court to completely preclude Gillispie from even seeking any form of relief by invoking *Stone* (and by completely ignoring all of the cases cited above).

## D. The Bankruptcy Court's Legal Errors Require Reversal

The court below made several additional legal errors.

First, the Court ignored the law above which provides that for there to be a "claim" under the Bankruptcy Code, there must be a right to payment under the relevant non-bankruptcy law. That applicable law in this instance, as it concerns federal civil rights claims asserting that a plaintiff was wrongfully incarcerated and convicted, is *Heck*. And, Gillispie had *no* right to payment under the applicable law. The Court also ignored the numerous authorities cited above (and in the briefing below) illustrating that the unique circumstances presented here,  when they unfortunately arise, are not subject to discharge as "claims."

Put differently, the Bankruptcy Court erred in failing to find that Gillispie had a *future* claim—a well-recognized sort of claim that is not subject to discharge in bankruptcy. *See In re Johns–Manville Corp.,* 600 F.3d 135 (2d Cir.2010) (discussing the application of due process to future claims in bankruptcy); *In re Grumman Olson Indus.*. 467 B.R. 694, 706 (S.D.N.Y. 2012) ("Courts have held in general that, for due process reasons, a party that did not receive adequate notice of bankruptcy proceedings could not be bound by orders issued during

28

those proceedings."); *see also id.* at 709 ("Because parties holding future claims cannot possibly be identified and, thus, cannot be provided notice of the bankruptcy, courts consistently hold that, for due process reasons, their claims cannot be discharged by the bankruptcy courts' orders."); *In re Waterman S.S. Corp.*, 157 B.R. 220, 222 (S.D.N.Y. 1993) ("The Bankruptcy Court correctly held that the potential future claims of those who had not manifested any detectable signs of disease when notice of the bar date was given, were not discharged in the bankruptcy proceeding."); *Sale Opinio*n, 407 B.R. at 506-07 (noting future claims).

The Bankruptcy Court reasoned that Gillispie was relying upon some sort of "accrued state law claim theory" derived from *Avellino & Bienes v. M. Frenville Company (In re Frenville Co.)*, 744 F.2d 332, 337 (3d Cir. 1994). This conclusion was erroneous. Gillispie did not cite or reply upon *Frenville*—the motion was premised on established Second Circuit law like *Chateaguay II* and other authorities. The Court's reference to this decision was entirely misplaced.

As a related matter, the Bankruptcy Court erred in how it applied *Chateaugay II*. The Court specifically ignored the reference to "non-bankruptcy law" in that case, which has been consistently re-affirmed

in subsequent Second Circuit decisions. *See Ogle*, 586 F.3d at 146; *Manville Forest*, 209 F.3d at 129; *Duplan Corp.*, 212 F.3d at 151; *Chateaugay II*, 53 F.3d at 497. The bankruptcy court went so far as to conclude: "The fact that Gillispie was not able as a matter of nonbankruptcy law to commence an action against Old GM and other before his conviction was vacated is irrelevant to the analysis." Order, 09-50026, Doc. 14133, at 22. This, too, was legal error.

The Bankruptcy Court appears to have reached its conclusion by looking to *contract* rather than *tort* principles and concluding that some sort of "fair contemplation" test should apply here, rather than the straightforward language of *Chateaugay II*. Order, 09-50026, Doc. 14133, at 12-13. This was error. The language of *Chateaugay II* (and other Second Circuit decisions) speaks for itself and does not include some nebulous "fair contemplation" idea like the one adopted by the bankruptcy court. Tellingly, to the extent the court below found that the "fair contemplation test" could be inferred from *Chateaugay I*, the opinion itself does not use that language. And, inferring such a test plainly ignores the consistent discussion and description of the appropriate legal standard in subsequent cases, including C*hateaugay*

30

*II. See Ogle*, 586 F.3d at 146; *Manville Forest*, 209 F.3d at 129; *Duplan Corp.*, 212 F.3d at 151; *Chateaugay II*, 53 F.3d at 497.

Even assuming there were some sort of "fair contemplation" test in contract cases, that does not mean it should be applicable in the context of tort cases generally, or in the more specific contexts of constitutional torts related to wrongful convictions that are subject to *Heck*. Indeed, there is an important difference between contract and tort claims, which *Chateaugay I* itself recognized. It makes little sense to think of "parties" or "contemplation" in the context of future tort claimants who, like Mr. Gillispie, may *never* actually have a "right to payment" at the time of the bankruptcy but-for some future event coming to pass. *See Chateaugay I,* 944 F.3d at 1004-05 (distinguishing contract and tort claims). By contrast, in the contract case, "[i]t is basic bankruptcy law that a pre-petition promise to satisfy an obligation upon the happening of a later condition is not transmogrified into a post-petition obligation when the condition is satisfied post-petition. Instead, it is simply a pre-petition contingent claim." *In re Applied Theory Corp.,*

31

312 B.R. 225, 245(Bankr. S.D.N.Y. 2004); *see also id.* at 245 n.87 (collecting contingent claim and contract cases).[8]

By being wrongfully convicted Gillispie was not a "party" to a contract—he did not plea to anything, but took a trial and fought the prosecution and subsequent conviction at every juncture. And, to be sure, the State of Ohio, the police officers who sought his conviction, and the GM employees who testified at Gillispie's trial certainly did not enter a "contract" or "agreement" where the fair contemplation of those efforts was Gillispie's exoneration. Indeed, the Bankruptcy Court specifically noted that "Old GM had no basis to suspect that Gillispie had any claim against Old GM relating to his February 1991 Ohio Criminal Conviction." *Order*, 09-50026, Doc. 14133, at 21. The notion of "fair contemplation," like any sort of notion that Gillispie had a "contingent claim," is inapplicable here.

---

[8] Gillispie is aware of no Second Circuit case ever having stated that *Chateaguay I* established a "fair contemplation" test beyond its own plain language. Indeed, the court below seems to have derived its entire rationale from *Grumman Olson*. Compare *Grumman Olson*, 445 B.R. at 252-52, *with* Order, 09-50026, Doc. 14133, at 12-14 (invoking virtually the same analysis). While Gillispie's position is that *Grumman Olson* reached the correct result, and that its due process analysis is sound, this portion of its decision construing Second Circuit authorities in a manner that the Second Circuit itself has not so done should be regarded as unpersuasive.

### E. Due Process Demands That Gillispie Be Permitted to Pursue His Claims Against New GM

In essence, if Gillispie is prevented from at least brining his claims against New GM, his very right to *ever* bring those claims will have been extinguished by a bankruptcy proceeding of which he was not a party could not have properly been a party at the time it occurred. Applying the Bankruptcy Code in this matter violates Gillispie's right to due process. *See Johns–Manville Corp.*, 600 F.3d at 151-58 ; *Grumman Olson*, 467 B.R. at 706; *In re Waterman S.S. Corp.*, 157 B.R. 220, 222 (S.D.N.Y. 1993).

It is, of course, well established that constitution applies to Mr. Gillispie's future claims, just as it might any other future claim (real or hypothetical) described in the caselaw. *Cf. In re Bennett*, 466 B.R. 422, 426 (Bankr. S.D. Ohio 2012) (explaining that "the United States Constitution, and in particular the due process requirement under the Fifth Amendment, trumps the Bankruptcy Code and Rules and those 'may not be used to circumvent constitutional due process requirements'" (quoting *Flynn v. Bankowski (In re Flynn)*, 402 B.R. 437, 445, n. 11 (1st Cir. BAP 2009)); *In re Hudson*, 260 B.R. 421, 444 (Bankr. W.D. Mich. 2001) ("[T]he Supreme Court has repeatedly held that the

33

laws passed pursuant to the Bankruptcy Clause are subject to the requirements of due process." (citation omitted)).

This is not a circumstance where any sort of notice would have been sufficient: Gillispie had no claim at the time of the petition. *See infra* II.B. (discussing the inadequacy of any notice).

The constitutional guarantee of due process demands more than just constructive or abstract "notice," at any rate. *See Zinermon v. Burch,* 494 U.S. 113, 129-30 (1990) (explaining that due process requires "post deprivation tort remedies" in situations where they are the "only remedies" one "could be expected to provide"); *Hagar v. Reclamation Dist. No. 108,* 111 U.S. 701 (1884) (explaining that due process "must be adapted to the end to be attained; and wherever it is necessary for the protection of the parties, it must give them an opportunity to be heard respecting the justice of the judgment sought"); *cf. Gilbert v. Homar,* 520 U.S. 924, 930 (1997) ("'[D]ue process is flexible and calls for such procedural protections as the particular situation demands.'") (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).

34

## II.   At the Very Least, Mr. Gillispie Should Be Able to File a Post-Bar Date Proof of Claim in the Old GM Bankruptcy Case.

Mr. Gillispie was wrongfully incarcerated for more than 20 years, from 1991 to 2011, until his conviction was first called into question by a federal *habeas* court that found the State of Ohio had deprived Gillispie of his right to due process and a fair trial under *Brady* and its progeny. Given his fundamental, constitutional right to due process, it would be error for this Court to hold that Gillispie—who has never had a prior opportunity to assert his claims—cannot even name either Old GM or New GM as defendants in his civil-rights suit. Accordingly, should the Court conclude that Gillispie cannot proceed against New GM, that he is entitled, for constitutional and equitable reasons, to pursue relief from Old GM's remaining estate.

### A. The Bankruptcy Court Erred in Finding Gillispie Had Not Satisfied Rule 9006.

Should the court conclude that Gillispie is not entitled to name New GM as a defendant in his civil-rights suit, it should nonetheless conclude Gillispie can pursue his claims against Old GM.

Federal Rule of Bankruptcy Procedure 9006(b)(1) "empowers a bankruptcy court to permit a late filing if the movant's failure to comply

35

with an earlier deadline 'was the result of excusable neglect.'" *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 382 (1993) (quoting FED. R. BANKR. P. 9006(b)(1)). In determining whether an individual has met her burden of demonstrating excusable neglect, the Court considers the "totality of the circumstances," including the (1) danger of prejudice to the debtor, (2) the length of delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was in the movant's control, and (4) whether the movant acted in good faith. *Id.* at 395.

At the end of the day, excusable neglect is an "elastic concept" and the Court's determination is "an equitable one." *Id.* at 392 & 395; *see also In re 50-Off Stores, Inc.*, 22 B.R. 897, 901 (Bankr. W.D. Tex. 1998) (explaining that "no single circumstance controls, nor is a court simply to proceed down a checklist ticking off traits").

Here, both the totality of the circumstances and equity demand that Gillispie be allowed to file a post-bar-date proof of claim in the Motors Liquidation Company bankruptcy. Indeed, the concept of "neglect" is an extremely poor fit for the circumstances here—where

Gillispie is not at any fault—which illustrates Gillispie should be allowed to file his claim after the bar date.[9]

Gillispie's reason for delay, as explained amply above, is simple: he did not, and could not have, filed his civil-rights claims concerning his wrongful incarceration until *after* his the criminal conviction was set aside. Before that, he was in prison continuously and, through his counsel at the Ohio Innocence Project, actively pursuing one of the most basic and important things one might predict a wrongfully convicted individual to pursue: his freedom. Gillispie's failure to bring a claim in the bankruptcy proceedings was not a matter of fault. Given that the reason for the delay is frequently viewed as the most significant factor in assessing this equitable doctrine, being wrongfully convicted is at the zenith of good reasons for an individual to not have filed a claim during the small window for filing claims in this case. *Cf. In re Queen Elizabeth*

---

[9] A seemingly more appropriate standard would be "good cause," given the absence of fault on behalf of Gillispie in being wrongfully convicted, not having a claim at the time of the bankruptcy, and adequate notice being impossible. *Cf. Moses v. Colvin*, 2014 WL 774654, at *3 (S.D.N.Y. Feb. 25, 2014) ("The good cause and excusable neglect standards have different domains .... The excusable neglect standard applies in situations in which there is fault; in such situations, the need for an extension is usually occasioned by something within the control of the movant. The good cause standard applies in situations in which there is no fault.").

*Realty Corp.,* 2017 WL 1102865, at *6 (Bankr. S.D.N.Y. Mar. 24, 2017)
(finding excusable neglect standard met where there was not fault, and
no notice).

As it relates to other issues in the "totality of the circumstances,"
this Court should consider the fact that if it rules that Gillispie cannot
pursue a claim against New GM or even Old GM, Gillispie will have,
effectively and through no fault of his own, *zero* opportunities to pursue
his legitimate claims against GM. Such a deprivation of remedies
undermines core rights, because without a remedy, the right is
completely diluted.

As far as prejudice to the estate is concerned, any will be minimal.
Gillispie's claim is the truly unique and rare case: he is the
quintessential future claimant who was wrongfully convicted based
upon pre-petition conduct but did not have a right for payment until
after the bankruptcy. Indeed, Gillispie's wrongful conviction is unique
among those who were wrongfully convicted because of the joint-
collaboration between Ohio police officers and GM supervisors who
falsely implicated Gillispie in crimes he did not commit.In other words,
Gillispie's civil rights claims are unlike many (and perhaps all) other

38

types of claims brought against GM asserting claims based upon pre-petition conduct, and thus will not prejudice Old GM through an influx of other civil rights claims. *Compare In re Enron Corp.*, 2003 WL 1889042, at *5 (Bankr. S.D.N.Y. Apr. 8, 2003) (denying a Rule 9006(b)(1) motion to file tardy proof of claim where a "deluge of motions seeking similar relief" could have occurred, thus causing substantial prejudice to the Debtor).

Moreover, as it concerns prejudice, the existence of an unknown, future claimant is not a complete surprise to the estate. In fact, the *Sale Opinion* recognized that this day might come: there were likely to be true "future claimants" who did not have "claims" within the meaning of the bankruptcy code at the time of the petition and close. This is why, for example, to "manage the liquidation of this very large and complex estate," the bankruptcy plan in this very case created the GUC trust in the first place and established "future claims" representatives for asbestos litigants, *In re Motors Liquidation Co.*, 447 B.R. 198, 201-02 (Bankr. S.D.N.Y. 2011). This is also why the Bankruptcy Court reserved its right to order certain "late claims" be allowed. Order, 09-50026, Doc. 11394. Likewise, the *Sale Opinion* recognized that many "Future

39

Claims" issues could arise after the purchase and sale (and now, after the bar date) "especially if Old GM were still in existence, and a claim could be filed with Old GM." 407 B.R. at 507. That is precisely what happened in this instance and why there is no prejudice.

Though it was completely out of his control, the length of delay is also minimal. The delay (and prejudice) are minimal because the GM Bankruptcy—one of the largest in U.S. history—is still an on-going and active matter, and the Bankruptcy Estate is nowhere near closed. The Second Circuit has issued one decision concerning the bankruptcy, and, especially with respect to the ignition-switch plaintiffs, is likely to issue more. Put differently, and a factor that relates to prejudice, Gillispie is not someone seeking to file a post-bar date claim where the distribution and funds have already been allocated or decided.

Finally, Gillispie has operated in nothing but good faith. At the time of the GM Bankruptcy Gillispie was involved in litigation in both state and federal court challenging his conviction. When his conviction

40

was overturned, he brought a civil-rights suit and named GM as a defendant.[10]

### B. Due Process Demands Gillispie Have The Opportunity to Pursue His Claims Against GM

Mr. Gillispie *could not* have received constitutionally adequate notice because, as a future claimant, he had absolutely no way of knowing that his rights were at stake in the GM bankruptcy. Indeed, given *Heck*, at the time of the sale, Mr. Gillispie had no right to payment at all, making any notice (even personal delivery) constitutionally inadequate. Old GM could not have provided Gillispie with constitutionally sound notice because he would have not have had any notice that he had any idea of the impact the proceedings would have had upon him at the time of the sale and bar date.

As a general matter, *Mullane v. Central Hanover Bank & Trust Company*, establishes that, to be consistent with due process, notice

---

[10] The court below found no excusable neglect because it presumed Gillispie had made a "mistake of law." This conclusion was erroneous. Gillispie did not have a claim at the time of the bankruptcy petition or the bar date. He was imprisoned, and he was wrongfully convicted. This is no reason to refuse to allow relief under Rule and Rule 9006(b)(1) here. Even assuming, arguendo, there some "mistake of law," that "mistake" should be excused here, as a matter of fundamental equity especially in light of *Chateaugay II* and *Heck*, which should govern.

must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action." 339 U.S. 306, 314 (1950). In elaborating on this standard, the Court emphasized that "when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Id*. at 315. Indeed, "notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance," and it must give "due regard for the practicalities and peculiarities of the case." *Id*.

These standards illustrate that *no* notice could have been constitutionally adequate here. That is, while *Mullane* allows constructive notice to certain unknown claimant, the constitution does not go so far as to allow constructive notice to be adequate for individuals who are not just unknown but who are, in many respects, unknowable as future claimants. As a consequence, courts and have also recognized that constructive notice to such unknown—and unknowing—future claimants fails to comport with the due process. *See, e.g.*, *Johns–Manville Corp.*, 600 F.3d at 151-58 (finding that

42

individual's circumstances gave rise to due process problems even where notice was adequate for others, and finding that that creditor could not be bound to the terms of the orders to which it played no part); *Kane v. Johns–Manville Corp.*, 843 F.2d 636, 639 (2d Cir.1988) (recognizing that future claims holders may be able to challenge a notice on due process grounds); *Grumman Olson*, 467 B.R. at 706; *In re Hexcel Corp.*, 239 B.R. 564, 571 (N.D. Cal. 1999) (similar).

Even assuming, for the sake of argument, that any notice sent to Gillispie could hypothetically been adequate, publication was inadequate here. Gillispie does not challenge the notion that GM published its bankruptcy in the newspapers. However, such opportunity, on account of being an innocent man in an Ohio prison and such notice is, plainly, going to be inadequate based upon the "practicalities and peculiarities" of his case. *Mullane*, 339 U.S. at 315; *see also*, *e.g.*, *United States v. Minor*, 228 F.3d 352, 357-59 (4th Cir. 2000) (inadequate prison notice); *Armendariz–Mata v. U.S. Dep't of*

43

*Justice*, 82 F.3d 679 (5th Cir. 1996) (publication and mailing to home not adequate where interested party was imprisoned).[11]

Finally, Gillispie certainly agrees with the lower court's conclusion that Gillispie was an "unknown creditor," at the time of the bankruptcy. But, he was *so* unknown—owing to his extant conviction—that no notice could have been adequate. The notion that GM could provide adequate notice to someone who (a) does not have a right to payment and (b) is imprisoned, is error. While the constitution does not demand that a debtor go to every length in the world to provide notice, the constitution does require that the concept of due process be flexible and responsive enough to account for the circumstances present, when they exist, that would make even constructive notice via publication completely ineffective, as they were here.

## CONCLUSION

Basic tenants of due process require that the Bankruptcy Court's decision be reversed and Mr. Gillispie be permitted to pursue his wrongful conviction claims against General Motors, whether it is New

---

[11] This Court should not give any time or weight to the fact that Gillispie's father (also named Roger) was sent a notice while Gillispie was in prison, as the court below did. This issue is a complete distraction.

GM or, alternatively, Old GM. Under *Heck*, Mr. Gillispie had no cause of action until after GM entered bankruptcy and no claim at the time of the sale. Additionally, Mr. Gillispie did not receive adequate notice and his case satisfies the excusable neglect standard.

Respectfully, this Court should reverse the decision of the Bankruptcy Court, and permit Gillispie to bring his claims against New GM. At the very least, and in the alternative, Mr. Gillispie should be permitted to file a post-bar date proof of claim against Old GM. Due process demands such an outcome.

RESPECTFULLY SUBMITTED,

David B. Owens
*Attorney for the Appellant*

Mike Kanovitz
David B. Owens
LOEVY & LOEVY
311 North Aberdeen St., 3FL
Chicago, IL 60607
(312) 243-5900
David@loevy.com

45

## <u>CERTIFICATE OF SERVICE AND COMPLIANCE</u>

I, David B. Owens, an attorney, certify that I caused the foregoing Appellant Roger Dean Gillispie's Opening Brief on Appeal to be served via the Court's electronic filing system on all counsel of record on June 29, 2018. I further certify that the foregoing complies with the type-volume limitations stated in Federal Rule of Appellate Procedure 8015(a), in that, per Microsoft Word's counting feature, the brief, inclusive of footnotes but exclusive of tables, is only  is 9,332,and well below the 14,000 word limit established in Rule 8015(a)(7).

<u>  /s/ David B. Owens</u>