No. 1:17-cv-08538-LTS

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

In re MOTORS LIQUIDATION COMPANY, ET AL.,

*f/k/a General Motors Corp., et al.,*

*Debtors.*

Roger Dean Gillispie, Appellant

v.

General Motors LLC and Wilmington Trust Company, as Trustee and
Administrator of the Motors Liquidation Company General Unsecured
Creditors Trust, Appellees

On Appeal from the United States Bankruptcy Court
for the Southern District of New York, No. 09-br-50026

## BRIEF OF APPELLEE, GENERAL MOTORS LLC

Arthur Steinberg
Scott Davidson
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York  10036
Telephone: (212) 556-2100
Facsimile: (212) 556-2222
asteinberg@kslaw.com
sdavidson@kslaw.com

*Counsel for Appellee General Motors LLC*

July 30, 2018

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Bankruptcy Rule 8014, Appellee General Motors LLC ("New GM") submits this Corporate Disclosure Statement:

General Motors LLC, a Delaware limited liability company, is owned by a single entity, General Motors Holdings LLC, also a Delaware limited liability company. General Motors LLC's only member is General Motors Holdings LLC. General Motors Holdings LLC's only member is General Motors Company, a Delaware corporation with its principal place of business in Wayne County, Michigan. General Motors Company has 100% ownership interest in General Motors Holdings LLC.

i

# TABLE OF CONTENTS

**Page**

STATEMENT OF JURISDICTION ............................................................... 1

STATEMENT OF THE ISSUES ................................................................. 1

STATEMENT OF THE CASE ................................................................... 2

    A.    The Bankruptcy Sale ............................................................. 2

    B.    Gillispie's Civil Action Against New GM ................................. 8

    C.    Gillispie's Motion for Leave and the Bankruptcy
           Court's October 2017 Opinion ............................................. 10

STANDARD OF REVIEW ..................................................................... 14

SUMMARY OF ARGUMENT .................................................................. 14

ARGUMENT ...................................................................................... 17

    A.    New GM Did Not Assume Any of the Liabilities that
           Gillispie Asserts in the Civil Action. .................................... 17

    B.    When Gillispie's Alleged Claims "Accrued" Is
           Irrelevant; His Bankruptcy Claims Arose Pre-Sale And
           Are Thus  Barred By The Sale Order ................................... 20

    C.    Gillispie Received Sufficient Notice of the 363 Sale ............. 32

CONCLUSION .................................................................................... 35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atkins v. Cory (In re Cory),*
   Adv. No. 08-4107, 2008 WL 5157515 (Bankr. W.D. Mo.
   July 18, 2008) ...................................................................... 30

*Austin v. BFW Liquidation, LLC (In re BFW Liquidation,
LLC),*
   471 B.R. 654 (N.D. Ala. 2012) ...................................... 29, 30

*Avellino & Bienes v. M. Frenville Co. (In re M. Frenville Co.),*
   744 F.2d 332 (3d Cir. 1984) .......................................... 20, 31

*In re Betancourt,*
   582 B.R. 480 (Bankr. W.D. Mo. 2018) ............................... 31

*Braniff Airways v. Exxon,*
   814 F.2d 1030 (5th Cir. 1987) ............................................ 22

*Brunswick Bank & Trust Co. v. Atanasov (In re Atanasov),*
   221 B.R. 113 (D.N.J. 1998) ................................................ 30

*In re Caldor, Inc.-NY,*
   240 B.R. 180 (Bankr. S.D.N.Y. 1999) ................................ 22

*Carroll v. Henry Cty, Ga.,*
   336 B.R. 578 (N.D. Ga. 2006) ............................................ 30

*In re Chateaugay Corp.,*
   53 F.3d 478 (2d Cir. 1995) ............................................ 25, 26

*City of N.Y. v. N.Y. N.H. & H.R. Co.,*
   344 U.S. 293 (1953) ............................................................ 33

*Conway Hosp., Inc. v. Lehman Bros. Holdings Inc.,*
   531 B.R. 339 (S.D.N.Y. 2015) ............................................ 21

DMSLIBRARY01\32548997.v1

*Danzig Claimants v. Grynberg (In re Grynberg)*,
　113 B.R. 709 (Bankr. D. Colo. 1990), *aff'd*, 966 F.2d 570
　(10th Cir. 1992) ................................................................... 23

*Matter of DG Acquisition Corp.*,
　188 B.R. 918 (Bankr. D. Del. 1995) ....................................... 22

*Epstein v. Official Comm. of Unsecured Creditors (In re Piper
　Aircraft Corp.)*,
　58 F.3d 1573 (11th Cir. 1995) ............................................... 29

*In re Finley, Kumble, Wagner, Heine*,
　160 B.R. 882 (Bankr. S.D.N.Y. 1993) .................................... 23

*In re Food Barn Stores, Inc.*,
　175 B.R. 723 (Bankr. W.D. Mo. 1994) .................................. 31

*In re Gen. Motors Corp.*,
　407 B.R 463 (Bankr. S.D.N.Y. 2009). .................................... 33

*In re Gen. Motors Corp.*,
　No. M 47(LAK), 2009 WL 2033079 (S.D.N.Y. July 9, 2009) ............. 32

*Gillispie v. Timmerman-Cooper*,
　835 F. Supp.2d 482 (S.D. Ohio 2011) ............................... 8, 10

*In re Grumman Olson Indus., Inc.*,
　467 B.R. 694 (S.D.N.Y. 2012) .......................................... 9, 31

*Heck v. Humphrey*,
　512 U.S. 477 (1994) ...................................................... 20, 26

*In re Houbigant*,
　188 B.R. 347 (Bankr. S.D.N.Y. 1995) .................................... 23

*In re Jenkins*,
　410 B.R. 182 (W.D. Va. 2008) .............................................. 30

*Johnson v. Mitchell*,
　No. CIV S-10-1968, 2011 WL 1586069 (E.D. Cal. Apr. 25,
　2011) .................................................................................. 30

DMSLIBRARY01\32548997.v1

*Memphis Cmty. Sch. Dist. v. Stachura*,
477 U.S. 299 (1986) ................................................................ 19

*In re Motors Liquidation Co.*,
428 B.R. 43 (S.D.N.Y. 2010) ................................................ 17

*In re Motors Liquidation Co.*,
430 B.R. 65 (S.D.N.Y. 2010) ................................................ 17

*In re Motors Liquidation Co.*,
541 B.R. 104 (Bankr. S.D.N.Y. 2015) ................................... 11

*In re Motors Liquidation Co.*,
549 B.R. 607 (Bankr. S.D.N.Y. 2016) ................................... 10

*In re Motors Liquidation Co.*,
576 B.R. 761 (Bankr. S.D.N.Y. 2017) ......................... *passim*

*In the Matter of Motors Liquidation Co.*,
829 F.3d 135 (2d Cir. 2016) .................................... 23, 24, 25

*In re Palm Coast, Matanza Shores Ltd. P'ship*,
101 F.3d 253 (2d Cir. 1996) ................................................. 14

*Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship*,
507 U.S. 380 (1993) ................................................................. 2

*In re Residential Capital, LLC*,
558 B.R. 77 (S.D.N.Y. 2016) ................................................ 21

*In re Sonnax Indus., Inc.*,
907 F.2d 1280 (2d Cir. 1990) ................................................. 1

*State v. Gillispie*,
No. 24456, 2012 WL 1264496 (Ohio App. 2 Dist. Apr. 13,
2012) ........................................................................................ 8

*In re Stewart Foods, Inc.*,
64 F.3d 141 (4th Cir. 1995) .................................................. 22

*Stone v. Kmart Corp.*,
No. 2:06-cv-302-WKW, 2007 WL 1034959 (M.D. Ala. 2007).. 27, 28, 29

v

*In re Texaco Inc.,*
    No. 10-CV-8151 (CS), 2011 WL 4526538 (S.D.N.Y. Sept.
    28, 2011) ................................................................................ 21

*Trusky v. Gen. Motors LLC (In re Motors Liquidation Co.),*
    No. 09–09803, 2013 WL 620281 (Bankr. S.D.N.Y. Feb. 19,
    2013) ...................................................................................... 18

*In re U.S.H. Corp. of N.Y.,*
    223 B.R. 654 (Bankr. S.D.N.Y. 1998) ................................... 33

*U.S. v. Gerth,*
    991 F.2d 1428 (8th Cir. 1993) .............................................. 22

*U.S. v. LTV Corp. (In re Chateaugay Corp.),* 944 F.2d 997,
    1004-05 (2d Cir. 1991) .......................................................... 31

*In re Westpoint Stevens, Inc.,*
    600 F.3d 231 (2d Cir. 2010) ................................................. 14

*In re XO Commc'ns, Inc.,*
    301 B.R. 782 (Bankr. S.D.N.Y. 2003) ................................. 332

**Statutes**

11 U.S.C. § 101(5) .................................................................... 21

28 U.S.C. § 157(a) ...................................................................... 1

28 U.S.C. § 157(b) ...................................................................... 1

28 U.S.C. § 158(a)(1) .................................................................. 1

28 U.S.C. § 1334 ......................................................................... 1

42 U.S.C. § 1983 ............................................................. 9, 19, 26

DMSLIBRARY01\32548997.v1

## STATEMENT OF JURISDICTION

This appeal is from the bankruptcy court's memorandum opinion and order (i) enjoining Appellant Roger Dean Gillispie ("Gillispie") from proceeding with his tort claims against New GM, and (ii) denying Gillispie's request for authorization to file a late proof of claim against Motors Liquidation Company (f/k/a General Motors Corporation) ("Old GM"). *See In re Motors Liquidation Co.*, 576 B.R. 761 (Bankr. S.D.N.Y. 2017) ("October 2017 Opinion"). The October 2017 Opinion "dispose[d] of discrete disputes within th[is] larger case" and, therefore, was immediately appealable. *See In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1283 (2d Cir. 1990). The bankruptcy court had jurisdiction under 28 U.S.C. §§ 157(a), (b), and 1334. This Court has jurisdiction under 28 U.S.C. § 158(a)(1).

## STATEMENT OF THE ISSUES[1]

1.    Whether the bankruptcy court correctly held that Gillespie's purported tort claims against New GM fell within the scope of Retained Liabilities, as defined in the Sale Agreement and, therefore, could not be asserted against New GM, given that such claims were entirely

---

[1]  Capitalized terms not defined in this section are defined in later sections of this brief.

DMSLIBRARY01\32548997.v1

based upon conduct of Old GM that occurred well before the 363 sale and Old GM's bankruptcy?

2.      Whether the bankruptcy court correctly held that Gillispie was a contingent/unknown creditor at the time of the 363 Sale because the acts that gave rise to his alleged claims, to which he was fully aware, occurred before Old GM's bankruptcy?

3.      Whether the bankruptcy court correctly held that Gillispie was provided constitutionally sufficient notice of the 363 Sale?

4.      Whether the bankruptcy court correctly held that Gillispie did not satisfy the *Pioneer* standard[2] for authorization to file a late claim against Old GM?

## STATEMENT OF THE CASE

### A.      The Bankruptcy Sale

On June 1, 2009 ("Petition Date"), Old GM and certain of its affiliates (collectively, the "Debtors") commenced cases under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York ("bankruptcy court").   On the

---

[2] The governing standard as to whether authorization should be given to file a late bankruptcy claim is set forth in *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380 (1993).

DMSLIBRARY01\32548997.v1

Petition Date, Old GM filed a motion ("Sale Motion") seeking approval of a sale ("363 Sale") and the original version of a sale agreement (as amended, the "Sale Agreement"), pursuant to which substantially all of Old GM's assets were sold to a newly formed, government-sponsored entity that would ultimately become New GM.  Old GM was the proponent of the Sale Motion and had the burden of seeking its approval consistent with due process requirements.

In the Sale Motion (¶¶ 46, 51 and 55[3]), Old GM stated that it was not practicable to provide direct mail notice to contingent and unknown creditors, and that publication notice should be sufficient under the circumstances.  In paragraph E of the Sale Procedures Order, dated June 2, 2009,[4] the bankruptcy court ruled that publication notice of the 363 Sale ("Publication Notice") was appropriate for unknown creditors and parties otherwise not required to be served with the Sale Notice.[5]

The 363 Sale hearing occurred over several days in late June and early July 2009.  On July 5, 2009, the bankruptcy court entered an

---

[3]  *See* Bankr. ECF No. 92.

[4]  *See* Bankr. ECF No. 274.

[5]  The Sale Procedures Order did not require Old GM to send direct mail notice to, among others, contingent creditors.

order ("Sale Order") approving the 363 Sale and the Sale Agreement (SA-0800-849),[6] and the 363 Sale closed on July 10, 2009.

In the Sale Order (SA-0802-03 (¶ E)), the Court held that, "[w]ith respect to parties who may have claims against the Debtors, but whose identities are not reasonably ascertainable by the Debtors (including potential contingent warranty claims against the Debtors), the Publication Notice was sufficient and reasonably calculated under the circumstances to reach such parties."[7]

With the exception of certain limited liabilities expressly assumed by New GM, the assets acquired by New GM were transferred "free and clear of all liens, claims, encumbrances, and other interests of any kind or nature whatsoever . . . including rights or claims based on any successor or transferee liability . . . ." SA-0821 (Sale Order, ¶ 7).

---

[6]   Gillispie did not file an appendix with his brief.  New GM is filing a Supplemental Appendix with this brief, and citing it as "SA-___."

[7]   Gillispie does not argue that he was unaware of Old GM's bankruptcy filing or the 363 Sale.  Rather, he repeats the same argument correctly rejected by the bankruptcy court that he did not have a claim against Old GM at the time of the 363 Sale and, therefore, is not bound by the Sale Order.

DMSLIBRARY01\32548997.v1

Gillispie does not contend that his claim was an Assumed Liability under the Sale Agreement or the Sale Order that approved it.[8]

The "no successor liability" prohibition is broad and repeated in a number of Sale Order sections.  For example, in paragraph 9 of the Sale Order, Old GM creditors were permanently enjoined from attempting to enforce liabilities against New GM (other than Assumed Liabilities), as follows:

> [A]ll persons and entities … holding liens, claims and encumbrances, and other interests of any kind or nature whatsoever, including rights or claims based on any successor or transferee liability, against [Old GM] or the Purchased Assets (whether legal or equitable, secured or unsecured, *matured or unmatured*, **contingent or noncontingent**, senior or subordinated), arising under or out of, in connection with, or in any way relating to [Old GM], the Purchased Assets, *the operation of the*

---

[8]  "Assumed Liabilities" are defined in Section 2.3(a) of the Sale Agreement.  SA-0883-885.  As the bankruptcy court correctly found, and Gillispie does not dispute, none of the categories of liabilities in Section 2.3(a) are applicable to the purported claims asserted by Gillispie.  *See Motors Liquidation Co.*, 576 B.R. at 775-76.

Section 2.3(b) of the Sale Agreement concerned Retained Liabilities.  SA-0885-887.  While a specific category of liabilities did not have to be listed in Section 2.3(b) to be considered Retained Liabilities, Section 2.3(b)(xi) is directly on point as it expressly covers "all Liabilities to third parties for Claims based upon Contract, tort or any other basis."  SA-0887.

DMSLIBRARY01\32548997.v1

> ***Purchased Assets prior to the Closing*** … are forever barred, estopped, and permanently enjoined … from asserting against [New GM] … such persons' or entities' liens, claims, encumbrances, and other interests, including ***rights or claims based on any successor or transferee liability***.

SA-0821-22 (Sale Order, ¶ 8 (emphasis added)); *see also* SA-0822-23 (¶ 9 ("This Order (a) shall be effective as a determination that, as of the Closing, (i) no claims other than Assumed Liabilities, will be assertable against the Purchaser, its affiliates, their present or contemplated members or shareholders, successors, or assigns, or any of their respective assets (including the Purchased Assets); (ii) the Purchased Assets shall have been transferred to the Purchaser free and clear of all claims (other than Permitted Encumbrances) . . .")).

Paragraph 46 of the Sale Order (SA-0839-40) similarly provides:

> Except for the Assumed Liabilities expressly set forth in the [Sale Agreement] … ***[New GM] … shall [not] have any liability for any claim that arose prior to the Closing Date . . .*** Without limiting the foregoing, [New GM] shall not have any successor, transferee, derivative, or vicarious liabilities of any kind or character for any claims, including, but not limited to, under any theory of ***successor or transferee liability,*** de facto merger or continuity . . . and products . . . liability, ***whether known or unknown as of the Closing, now existing or hereafter arising,***

6

> **asserted or unasserted, fixed or contingent, liquidated or unliquidated.**

(Emphasis added); *see also* SA-0840-41 (Sale Order ¶ 47 ("Effective upon the Closing … all persons and entities are forever prohibited and enjoined from commencing or continuing in any manner any action … against [New GM] … with respect to any (i) claim against [Old GM] other than Assumed Liabilities")).

The Sale Order further provides that, except for Assumed Liabilities, New GM is not liable for Old GM's conduct.  Paragraph AA of the Sale Order holds that New GM did not assume any liabilities "arising in any way in connection with any agreements, ***acts, or failures to act, of any of [Old GM]*** or any of [Old GM's] predecessors or affiliates, ***whether known or unknown***, ***contingent or otherwise***, whether arising prior to or subsequent to the commencement of these chapter 11 cases, and whether imposed by agreement, understanding, law, equity or otherwise, including, but not limited to, claims otherwise arising under doctrines of successor or transferee liability." SA-0812.

The Sale Order, at paragraph 6 (SA-0820-21), also held that the Sale Agreement would:

> be binding in all respects upon the Debtors, their affiliates, all ***known and unknown creditors*** of, and holders of equity security interests in, any Debtor, including any holders of liens, claims, encumbrances, or other interests, including rights or claims based on any ***successor or transferee liability . . . .***

(emphasis added).

## B   Gillispie's Civil Action Against New GM

In 1991 – ***18 years before Old GM's bankruptcy*** – Gillispie was convicted of certain crimes in state court in Ohio.  Twenty years after his conviction and after numerous appeals, motions, and other legal proceedings, Gillispie's conviction was called into question, first in 2011 by a federal court, and then in 2012 by a state court.  *See Gillispie v. Timmerman*-Cooper, 835 F. Supp.2d 482 (S.D. Ohio 2011), and *State v. Gillispie*, No. 24456, 2012 WL 1264496 (Ohio App. 2 Dist. Apr. 13, 2012).

In December 2013, Gillispie commenced a civil action ("Civil Action") against numerous defendants, including New GM, in the Southern District of Ohio asserting various causes of action under 42

U.S.C. § 1983.[9]   The Civil Action is based on events that occurred *before* Gillispie's conviction in 1991.  Gillispie alleged a conspiracy by certain police officers, other public officials and an individual then working for Old GM that purportedly resulted in his arrest and incarceration.  It is undisputed that every one of these events occurred **between 18 and 21 years before Old GM's bankruptcy case**, and that every action Gillispie complained of concerned solely the conduct of an Old GM employee.  There is absolutely no allegation that New GM was in any way involved in any of the conduct complained of by Gillispie.

Moreover, Gillispie has "consistently maintained his innocence and pursued every available avenue for obtaining post-conviction relief he could seek."   Gillispie's Brief at 6-7; *see also* SA-0002 (Motion for Leave, p. 2 (Gillispie "steadfastly maintained his innocence and labored tirelessly for over 20 years to clear his name")).  Both the federal and

---

[9]   In addition to the claims against New GM (or Old GM), the underlying complaint joins over a dozen other defendants, including the City of Miami Township, members of the police department in the City of Miami Township, Montgomery County, and employees of the Miami Valley Regional Crime Lab.  SA-0021-47 (Amended Complaint).  This is **not** a situation where Gillispie is without a legal remedy if the October 2017 Opinion is affirmed.

9

state decisions detail Gillispie's extensive efforts to secure his release.
For example, on February 26, 1991 – two weeks after his conviction –
Gillispie filed a motion in state court seeking a new trial.  *See Gillispie*,
835 F. Supp.2d at 487.  Thereafter, between 1992 and 2008, Gillispie
sought some form of relief from the courts at least 18 times, all of which
had the goal of overturning his conviction.  *See id.* at 487-492.[10]
Gillispie's conviction was affirmed on eight different occasions between
1991 and 2008.  *See Motors Liquidation Co.*, 576 B.R. at 765.

Based on the above, there can be no question about Gillispie's
belief that he was wrongfully prosecuted and convicted, and his
awareness of any claim he could assert against Old GM at the time of
the 363 Sale.

## C.  Gillispie's Motion for Leave and the Bankruptcy Court's October 2017 Opinion

After New GM advised Gillispie that his Civil Action against New
GM violated the Sale Order[11] and that any issues regarding such Order

---

[10]  Gillispie does not assert that, during this lengthy period of
litigation activity, he commenced any litigation against Old GM.

[11]  In his brief, Gillispie frequently misuses the term "General
Motors" to blur the lines between Old GM and New GM, which are
separate and distinct entities.  *See In re Motors Liquidation Co.*, 549
B.R. 607, 609 (Bankr. S.D.N.Y. 2016) ("New GM is *not* a successor in

10

had to be first addressed by the bankruptcy court, Gillispie filed a motion ("Motion for Leave") in that court in 2014 seeking permission to sue New GM, or to file a late proof of claim against the Motors Liquidation Company General Unsecured Creditor Trust ("GUC Trust").[12]  SA-0001-19.  In that motion, Gillispie advanced the same arguments as he does in this appeal, including that (i) he did not have a "claim" at the time of Old GM's bankruptcy as defined by the Bankruptcy Code, and (ii) he was a "future" creditor of Old GM at the time of Old GM's bankruptcy and therefore the Sale Order is not binding on him.  SA-0008-14.  In the alternative, if he could not assert

---

interest to General Motors Corporation ('Old GM'); it is a completely separate legal entity from Old GM.").  By doing so, Gillispie has violated another one of the bankruptcy court's rulings (not the subject of this appeal).  *See In re Motors Liquidation Co.*, 541 B.R. 104, 126-27 (Bankr. S.D.N.Y. 2015) ("A variant of that—but equally offensive—is the apparently intentional use by many plaintiffs of allegations that do not distinguish between Old GM and New GM, and that continue to refer to "General Motors" or "GM," which to almost anyone would muddy the distinction.  In light of the Sale Order and all of the rulings that have followed it, the offending counsel, once again, should know better.  The Court sustains New GM's objections to that practice.").

[12]  The GUC Trust was created as a post-confirmation successor to Old GM pursuant to Old GM's plan of reorganization.  The GUC Trust is also an appellee in this appeal and will be filing its own brief addressing the only appellate issue applicable to it – *i.e.*, the bankruptcy court's ruling that Gillispie could not file a late proof of claim against the Old GM estate.

DMSLIBRARY01\32548997.v1

his claims against New GM as a future creditor, Gillispie sought authorization to file a late proof of claim against Old GM.  SA-0016-19.

The bankruptcy court analyzed the Sale Order and held that Old GM's assets were transferred to New GM free and clear of all claims and interests, including Gillispie's claims based on successor liability. *See Motors Liquidation Co.*, 576 B.R. at 769-70.  Referring to the injunction provisions in the Sale Order, as well as the provision that New GM would not be not liable for Old GM's conduct, the bankruptcy court found that "[a]ssumed Liabilities of New GM do not include any category of liabilities applicable to this case, while Retained Liabilities expressly include 'all Liabilities of third parties for Claims based upon Contract, tort, or any other basis.'" *Id.* at 770-71.

The bankruptcy court then reviewed the definitions of contingent or unknown creditors, as contrasted to future creditors. *Id.* at 771.  It found that a contingent obligation, under the test adopted by the Second Circuit Court of Appeals, was a claim if "the occurrence of the contingency or future event that would trigger liability was 'within the actual or presumed contemplation of the parties at the time the original relationship between the parties was created.'" *Id.* (citation omitted).

12

The same would not be true of a future creditor of Old GM; in that circumstance, the future event was not within the actual or presumed contemplation of the parties when their relationship was established. The bankruptcy court determined that Gillispie's claims were contingent claims because:

> [a]ll of the events that formed the basis for his Civil Action occurred during or before calendar year 1991, and were related to testimony given by Old GM employees in connection with Gillispie's arrest and conviction. The fact that Mr. Gillispie was not able as a matter of nonbankruptcy law to commence an action against Old GM and others before his conviction was vacated is irrelevant to the analysis.

*Id.* at 776-77.

The bankruptcy court also concluded that Gillispie was an "unknown" creditor (as contrasted to a creditor "known" to Old GM) because Old GM could not have known that Gillispie was eventually going to assert tort claims against Old GM. *Id.* at 777-78. As an unknown creditor, Gillispie was only entitled to publication notice of the deadline for creditors of Old GM to file proofs of claim against the bankruptcy estate. *Id.* at 778. Accordingly, because Old GM provided publication notice, Gillispie's claims against New GM are barred by the Sale Order. *Id.* at 775-77.

13

The remainder of the October 2017 Opinion concerns Gillispie's request to file a late proof of claim against Old GM, which was also denied. *Id.* at 778-79.

## STANDARD OF REVIEW

Review of a bankruptcy court's order is plenary. *See In re Palm Coast, Matanza Shores Ltd. P'ship*, 101 F.3d 253, 256 (2d Cir. 1996). The bankruptcy court's conclusions of law are subject to *de novo* review, but its factual findings are subject to review only for clear error. *In re Westpoint Stevens, Inc.*, 600 F.3d 231 (2d Cir. 2010).

## SUMMARY OF ARGUMENT

Gillispie's claims are based exclusively on events that took place *over 18 years before* New GM came into existence.  He has not alleged – nor could he allege – any improper conduct of New GM.  The alleged improper conduct is that of an Old GM employee.  New GM did not assume this type of tort claim in the Sale Agreement and any successor liability claims are barred by the Sale Order, which explicitly held that New GM purchased Old GM's assets free and clear of all claims against Old GM based on, among other things, Old GM's conduct and *successor*

*liability claims*.  Accordingly, Gillispie's claims against New GM are barred as a matter of law.[13]

Gillispie's argument is based on a flawed premise that, at the time of Old GM's bankruptcy filing, he was a "future creditor" of Old GM.  As correctly found by the bankruptcy court, however, Gillispie had a prepetition, contingent, unknown and unliquidated claim against Old GM.  The events that gave rise to his alleged claims occurred around calendar year 1991, and were related to testimony given by an Old GM employee in connection with Gillispie's arrest, trial and conviction.  The fact that Gillispie could not commence litigation against Old GM until his conviction was overturned does not change the categorization of his claim as a contingent prepetition claim.

Gillispie effectively conceded this point below (and in his appellate brief) in asserting that he has "labored tirelessly for over 20 years to clear his name."  SA-0002 (Motion for Leave, p. 2).  It is indisputable that the alleged events were all prepetition, and that Gillispie was fully

---

[13]  Gillispie also has appealed the bankruptcy court's ruling that he cannot file a late proof of claim against Old GM.  New GM respectfully submits that the bankruptcy court's conclusions were correct and should be affirmed, and will rely on the Appellee Brief to be filed by the GUC Trust with respect to this issue.

15

cognizant of those events for many years before Old GM's bankruptcy filing. In such circumstances, Gillispie could never be considered a "future creditor" of Old GM.

As an "unknown" prepetition creditor with a contingent claim as of the 363 Sale, Gillispie received constructive notice of the 363 Sale by publication. Accordingly, Gillispie received proper due process notice of the 363 Sale.

Gillispie improperly conflates notice of the 363 Sale and his ability to file a claim against Old GM. Gillispie effectively conceded that he was given proper notice of the 363 Sale and, thus, had the ability to assert his rights prior to the entry of the Sale Order. That concession ends the matter for Gillispie with respect to his asserted claims against New GM. It is the Sale Order and the structure of the sale transaction approved by the bankruptcy court that protects New GM from Gillispie's claims. Whether Gillispie could have filed a claim against Old GM is a separate issue. The Old GM claims process took place well after the 363 Sale. Contingent creditors were instructed to file claims by the claims bar date established by the bankruptcy court. The

16

bankruptcy court correctly ruled that Gillispie was a contingent, unknown, prepetition creditor.

As more fully explained below, the October 2017 Opinion should be affirmed in all respects.

### ARGUMENT

New GM acquired substantially all of the assets of Old GM on July 10, 2009 in a transaction approved by the bankruptcy court, and the 363 Sale was affirmed on appeal in 2010 by this Court).[14]  The scope and limitations of New GM's responsibilities are defined in the Sale Agreement and Sale Order.  The bankruptcy court correctly concluded that Gillispie's claims are barred by the plain terms of the Sale Order.

**A.    New GM Did Not Assume Any of the Liabilities that Gillispie Asserts in the Civil Action.**

Every cause of action asserted by Gillispie against New GM is based on the conduct of an Old GM employee that occurred almost two decades before New GM came into existence. SA-0040-42 (Amended Complaint, ¶¶ 84, 91, 98-103).  Gillispie admits this critical fact in his brief, when he asserts that his "§1983 claims are premised upon seeking

---

[14]    *See In re Motors Liquidation Co.*, 430 B.R. 65 (S.D.N.Y. 2010); *In re Motors Liquidation Co.*, 428 B.R. 43 (S.D.N.Y. 2010)**.**

17

damages relating to his wrongful conviction and incarceration . . . ." Gillispie's Brief, at 20.  These events indisputably occurred well before the Petition Date.

Put simply, "New GM is not liable for Old GM's conduct . . . ." *Trusky v. Gen. Motors LLC (In re Motors Liquidation Co.)*, Adv. Proc. No. 09–09803, 2013 WL 620281, at *2 (Bankr. S.D.N.Y. Feb. 19, 2013); *see also* SA-0812 (Sale Order, ¶ AA (New GM did not assume any liabilities "arising in any way in connection with any agreements, acts, or failures to act, of any of [Old GM] or any of [Old GM's] predecessors or affiliates, whether known or unknown, contingent or otherwise, whether arising prior to or subsequent to the commencement of these chapter 11 cases, and whether imposed by agreement, understanding, law, equity or otherwise, including, but not limited to, claims otherwise arising under doctrines of successor or transferee liability")).

Moreover, the Sale Agreement specifically states that Retained Liabilities (*i.e.*, those not assumed by New GM) include "all Liabilities to third parties for Claims based upon Contract, tort or any other basis[.]"  SA-0887 (Sale Agreement, § 2.3(b)(xi)).  As the bankruptcy court found, Gillispie's claims in the Amended Complaint – *i.e.*, claims

18

based on 42 U.S.C. § 1983 – sound in tort and are therefore Retained Liabilities that cannot be asserted against New GM. *See Motors Liquidation Co.*, 576 B.R. at 776; *see also Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 305 (1986) ("We have repeatedly noted that 42 U.S.C. § 1983 creates a species of tort liability . . . ." (internal citations omitted)). Accordingly, because all of Gillispie's claims are based on Old GM's conduct, they are Retained Liabilities that cannot be maintained against New GM.

Gillispie's attempt to impose "successor" liability upon New GM is also a violation of the Sale Order. Under that Order, New GM is not a successor to Old GM and it did not assume any liabilities in connection with successor or transferee liability. That finding is expressly provided by the Sale Order. SA-0812-14, 0820-23, 0839-41 (Sale Order, ¶¶ AA, BB, DD, 6, 7, 8, 10, 46 and 47); SA-0995-96 (Sale Agreement, § 9.19).

Based on the foregoing, the claims that Gillispie asserted in the Amended Complaint against New GM constitute Retained Liabilities and are precluded by the binding "no successor liability" provisions in the governing Sale Order and Sale Agreement. Accordingly, the bankruptcy court correctly barred them against New GM.

19

**B.   When Gillispie's Alleged Claims "Accrued" Is Irrelevant; His Bankruptcy Claims Arose Pre-Sale And Are Thus <u>Barred By The Sale Order.</u>**

In his motion below and repeated in this appeal, Gillispie contends that he is a "future" creditor because he could not have commenced a lawsuit until his conviction was called into question, and thus he could not be bound by the Sale Order.  *See, e.g.*, Gillispie's Brief, at 3 ("Gillispie had good reason for not filing a proof of claim at the time of the bankruptcy closing that took place years before his exoneration: he was wrongfully convicted, in prison, ***and his claims had yet to accrue***. (emphasis added)); *see also id.* at 14 ("Gillispie ***could not have brought his § 1983 action*** until after his conviction was overturned." (emphasis added)); SA-0008 (Motion for Leave, p. 8).[15]

---

[15]   While Gillispie in his brief (p. 29) takes issue with the bankruptcy court's finding that he was "implicitly rel[ying] on the 'accrued state law claim theory'" adopted by the Third Circuit in *Avellino & Bienes v. M. Frenville Co. (In re M. Frenville Co.),* 744 F.2d 332, 337 (3d Cir. 1984) (*Motors Liquidation Co.*, 576 B.R. at 771-72), this is exactly what Gillispie is doing.  He contends that since his claims did not accrue under *Heck v. Humphrey*, 512 U.S. 477 (1994), he did not have a claim under the Bankruptcy Code.  As the bankruptcy court appropriately found, *Frenville* has been rejected by a majority of courts and later decisions in the Third Circuit, and has never been the law in the Second Circuit. *See Motors Liquidation Co.*, 576 B.R. at 771-72 (and the cases cited therein).  Accordingly, Gillispie's conclusion is wrong and

20

Gillispie's argument demonstrates a fundamental misunderstanding of when a claim *arises* for bankruptcy purposes. "Federal bankruptcy law determines when . . . state-law contract or tort claims ar[i]se." *In re Texaco Inc.*, No. 10-CV-8151 (CS), 2011 WL 4526538, at *3 (S.D.N.Y. Sept. 28, 2011); *see also Conway Hosp., Inc. v. Lehman Bros. Holdings Inc.*, 531 B.R. 339, 342 (S.D.N.Y. 2015) ("The Bankruptcy Code determines when Conway's claim arose."); *In re Residential Capital, LLC*, 558 B.R. 77, 84 (S.D.N.Y. 2016) (quoting *Conway Hosp.*).

The Bankruptcy Code defines a "claim" as "[a] right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured . . . ." 11 U.S.C. § 101(5).[16]  A claim arises regardless of enforcement efforts (*i.e.*, future litigation) or whether the claim is contingent, unliquidated, or

---

he *did* have a claim that could have been asserted in Old GM's bankruptcy.

[16]   Gillispie admits that, if he held a claim at the time of the bankruptcy filing, the Sale Order would bar his claims as against New GM.  *See* Gillispie's Brief, at 15 ("If Gillispie had a 'claim,' then the 'free and clear' provision of the sale can be enforced against him . . .").

21

unmatured when the petition is filed. *See In re Caldor, Inc.-NY*, 240 B.R. 180, 192 (Bankr. S.D.N.Y. 1999) ("Because contingent and unmatured rights of payment are 'claims' under the Bankruptcy Code, a right to payment that is not yet enforceable under non-bankruptcy law may be defined as a claim" under the Bankruptcy Code); *U.S. v. Gerth*, 991 F.2d 1428, 1433 (8th Cir. 1993) ("[D]ependency on a postpetition event does not prevent a debt from arising prepetition."); *In re Stewart Foods, Inc.*, 64 F.3d 141, 146 (4th Cir. 1995) ("[T]hat the payments became due after the bankruptcy filing does not alter the conclusion that the payments are pre-petition obligations.") (citing *Chiasson v. J. Louis Matherne & Assocs. (In re Oxford Mgmt., Inc.)*, 4 F.3d 1329, 1335 n.7 (5th Cir. 1993) ("A claim is not rendered a post-petition claim simply by the fact that time for payment is triggered by an event that happens after the filing of the petition.")); *Braniff Airways v. Exxon*, 814 F.2d 1030, 1036 (5th Cir. 1987) ("The character of a claim is not transformed from pre-petition to postpetition simply because it is contingent, unliquidated, or unmatured when the debtor's petition is filed."); *Matter of DG Acquisition Corp.*, 188 B.R. 918, 922 (Bankr. D. Del. 1995) ("A

creditor may possess a bankruptcy claim and not possess a cause of action on that claim.").

To determine when a claim arose, some "triggering act" constituting the basis for a cause of action must have occurred prior to the filing of the bankruptcy petition. *See Danzig Claimants v. Grynberg (In re Grynberg)*, 113 B.R. 709 (Bankr. D. Colo. 1990), *aff'd*, 966 F.2d 570 (10th Cir. 1992); *see also In re Finley, Kumble, Wagner, Heine*, 160 B.R. 882, 891-92 (Bankr. S.D.N.Y. 1993) (when obligation stems from a contractual obligation, even a postpetition breach will be treated as giving rise to a prepetition liability if the contract was executed prepetition); *In re Houbigant*, 188 B.R. 347, 355 (Bankr. S.D.N.Y. 1995) (same).

While Gillispie asserts that he did not have a claim, contingent or otherwise,[17] as defined by the Bankruptcy Code at the time of the closing of the 363 Sale, this same type of argument was expressly rejected by the Second Circuit in *In the Matter of Motors Liquidation Co.*, 829 F.3d 135, 156-157 (2d Cir. 2016) ("***Second Circuit Opinion***").

---

[17]   Gillispie admits that a contingent claim qualifies as a "claim" under the Bankruptcy Code.   *See* Gillispie's Brief, at 16 (quoting Bankruptcy Code definition of "claim," including a "right to payment" that is "contingent" or "unmatured").

DMSLIBRARY01\32548997.v1

There, the Second Circuit confirmed that a bankruptcy claim is established even "[i]f the right to payment is contingent on future events," provided that the claim emanates from pre-petition conduct giving rise to that contingent claim. *Id.* at 156.

The Second Circuit then analyzed claims by certain individual plaintiffs asserting economic loss claims against New GM based on Old GM vehicles. It found that "[t]hese individuals also, by virtue of owning Old GM cars, had come into contact with the debtor prior to the bankruptcy petition. Yet the ignition switch defect (and other defects) were only revealed some five years later." *Motors Liquidation Co.*, 829 F.3d at 157. In expressly rejecting the same argument Gillispie makes here, the Second Circuit held that because the economic loss plaintiffs had a right to payment prior to the bankruptcy filing, their contingent claims against New GM would be barred by the "free and clear" provisions in the Sale Order:

> GUC Trust thus asserts that there was no right to payment prior to the petition [for economic loss plaintiffs]. **We disagree**. The economic losses claimed by these individuals were "contingent" claims. 11 U.S.C. § 101(5). **That is, the ignition switch defect was there, but was not yet so patent that an individual could, as a practical matter, bring a case in court.**

24

*Id.* (emphasis added).

The Second Circuit ruled that the following test should be applied with respect to when a claim arises for bankruptcy purposes: "Such a claim must arise from a (1) right to payment (2) that arose before the filing of the petition or resulted from pre-petition conduct fairly giving rise to the claim. Further, there must be some contact or relationship between the debtor and the claimant such that the claimant is identifiable." *Id.* at 156.

Gillispie's claims clearly satisfy this test. All of Gillispie's claims arose from pre-petition conduct of Old GM about which he was well aware. Gillespie had a relationship with Old GM before the Petition Date that gave rise to his claims (*i.e.*, his right to payment). As such, Gillispie possessed a pre-petition, contingent claim against Old GM.[18]

---

[18]  *In re Chateaugay Corp.*, 53 F.3d 478 (2d Cir. 1995) ("*Chateaugay II*"), on which Gillispie relies, is consistent with the test set forth in the Second Circuit Opinion. *Chateaugay II* held that a "claim will be deemed pre-petition when it arises out of a relationship recognized in, for example, the law of contracts or torts. 'A claim exists only if before the filing of the bankruptcy petition, the relationship between the debtor and the creditor contained all of the elements necessary to give rise to a legal obligation—'a right to payment'—under the relevant non-bankruptcy law.'" *Id.* at 497 (quoting *In re Nat'l Gypsum Co.*, 139 B.R. 397, 405 (N.D. Tex. 1992)). *Chateaugay II* recognized that the definition of claim as used in the Bankruptcy Code

DMSLIBRARY01\32548997.v1

In *Heck* – the main case relied on by Gillispie – the Supreme Court addressed the issue of when a prisoner could file a Section 1983 claim against county prosecutors and a state police investigator for his alleged unlawful arrest and conviction.  *See Heck v. Humphrey*, 512 U.S. 477 (1994).  *Heck* neither addressed nor decided when a claim arises for bankruptcy purposes.[19]  The Supreme Court held that "a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not ***accrue*** until the conviction or sentence has been invalidated."  *Id.* at 489–90 (emphasis added).

Here, however, the issue is not when Gillispie's Section 1983 claim ***accrued*** so that he could file a lawsuit against state and local officials, but rather when Gillispie's claim ***arose*** for purposes of Old GM's bankruptcy proceeding.  These are different concepts.  Gillispie's bankruptcy claims arose almost two decades before the closing of the 363 Sale.

---

includes contingent and unmatured claims.  *See Chateaugy II*, 53 F.3d at 496.  As found by the bankruptcy court, and as demonstrated herein, Gillispie had a contingent claim at the time of the 363 Sale.

[19]  For this same reason, all of the other cases cited by Gillispie at pages 22-23 of his brief that cite to *Heck* are similarly inapposite.

26

As found by the bankruptcy court, a case directly on point is *Stone v. Kmart Corp.*, No. 2:06-cv-302-WKW, 2007 WL 1034959 (M.D. Ala. 2007).  In *Stone*, the plaintiff was arrested and charged with theft from Kmart prior to the commencement of Kmart's bankruptcy case.  After the bar date for asserting claims, "the [theft] charge against plaintiff was *nolle prosequi* [*i.e.*, no longer prosecuted], and she subsequently filed [an] action in state court exactly two years later . . . claiming the proceedings instituted by Kmart were done maliciously and without probable cause."  *Id.* at *1.  The court aptly summed up the parties contentions as follows:  "Kmart claims the cause of action 'arose' during the claim period because the arrest occurred during that period.  Plaintiff responds that her cause of action for malicious prosecution did not accrue until all the elements were in place, which was February 23, 2004, when the charges were *nolle prosequi*."  *Id.*  This is the same issue here.

While the court in *Stone* agreed with plaintiff that her claim for malicious prosecution did not accrue until "the charges were *nol-prosed* by the prosecut[ion]" (*id.* at *2), that was not the end of the inquiry. The court also agreed with Kmart's argument, that "the definition of a

27

claim under the Bankruptcy Code is broad and should include Plaintiff's

cause of action." *Id.* The court held as follows:

> The accrual time for Plaintiff's malicious prosecution claim
> under Alabama law does not control this action. The
> relevant inquiry is whether a claim has accrued under
> bankruptcy law based upon the statutory definition of a
> claim. The court finds that Plaintiff's claim accrued for
> purposes of bankruptcy law prior to the Bar Date. Applying
> the broad definition of claim to the facts of this case,
> Plaintiff, at the time of her arrest, had an arguably remote
> claim for malicious prosecution against Kmart. The scope of
> the term claim, as determined through the legislative history
> of the Bankruptcy Code, is more than broad enough to
> accommodate a malicious prosecution action, although the
> action has not accrued for purposes of state law. The claim
> is contingent upon termination of the criminal case in favor
> of Plaintiff, which at least arguably would happen at some
> point during her criminal investigation or trial. That makes
> the claim at least "contingent" or "unmatured" in the context
> of the Code. Although, at first blush, the result seems unfair
> to Plaintiff, her claim is inextricably intertwined with the
> pre-bankruptcy state of Kmart, and therefore, if allowed,
> would render the "fresh start" mandate of Congress
> meaningless.

*Id.* at *3 (citations omitted). The *Stone* case is on "all fours" with the

case at hand and disposes of Gillispie's arguments.

Gillispie's attempt to distinguish *Stone* misses the mark. Gillispie

asserts that *Stone* was relying on Eleventh Circuit law rather than

Second Circuit law. However, as the bankruptcy court observed, "[i]n

*Grumman*, the District Court, in affirming the decision of the

28

Bankruptcy Court, ruled that the Second Circuit's 'fair contemplation' test was consistent with the well-known 'Piper test,' as articulated by the Eleventh Circuit in *Epstein v. Official Comm. of Unsecured Creditors (In re Piper Aircraft Corp.)*, 58 F.3d 1573 (11th Cir. 1995)." *Motors Liquidation Co.*, 576 B.R. at 771 (citing *In re Grumman Olson Indus., Inc.*, 467 B.R. 694, 705 (S.D.N.Y. 2012)).   Accordingly, the Eleventh Circuit "Piper test" relied on in *Stone* (*see Stone*, 2007 WL 1034959, at *3), is consistent with Second Circuit law.

Gillispie's other cases either support New GM or are inapposite. For example, in *Austin v. BFW Liquidation, LLC (In re BFW Liquidation, LLC)*, 471 B.R. 654 (N.D. Ala. 2012), the plaintiff commenced an action against the debtor and the purchaser of its assets, asserting various claims based on her arrest for using checks with insufficient funds.   All of plaintiff's claims were dismissed *as against the purchaser* because the actions complained of – just like the situation here – occurred prior to the purchase of the debtor's assets.   *Id.* at 660-61.   In addition, the *BFW Liquidation* passage Gillispie quotes concerned the plaintiff's claims against the debtor, not the purchaser of

the debtor's assets.  *Id.* at 667.  Thus, *BFW Liquidation* supports New GM's position—not Gillispie's.

The remaining cases cited by Gillispie are irrelevant to the issue here and provide no support for his argument.  *See Johnson v. Mitchell*, No. CIV S-10-1968, 2011 WL 1586069 (E.D. Cal. Apr. 25, 2011) (discussing a malicious prosecution claim as property of the estate, ***not*** as a claim against the debtor's estate (emphasis added)); *In re Jenkins*, 410 B.R. 182 (W.D. Va. 2008)(same); *Carroll v. Henry Cty, Ga.*, 336 B.R. 578 (N.D. Ga. 2006)(same); *Brunswick Bank & Trust Co. v. Atanasov (In re Atanasov)*, 221 B.R. 113 (D.N.J. 1998) (discussing ***debtor's*** malicious prosecution claim for purposes of setoff, not a creditor's claim against the estate for malicious prosecution (emphasis added)); *Atkins v. Cory (In re Cory)*, Adv. No. 08-4107, 2008 WL 5157515 (Bankr. W.D. Mo. July 18, 2008) (the "parties ***agreed*** that the outcome of the Debtors' motion [that plaintiff's complaint ***against the debtors*** for malicious prosecution was time barred] turn[ed] on the date on which

the Plaintiff's cause of action for malicious prosecution **accrued** under state law" (emphasis added)).[20]

Gillispie's attempt to distinguish his contingent tort claims from contingent contract claims is a distinction without a difference and should be rejected.  The "future" situation referred to in *Chateaugay* and other cases cited by Gillispie concerned a tort victim that had some pre-petition contact with the tort-feasor but, significantly, the injury had not manifested itself prior to the bankruptcy.  *See, e.g.*, *U.S. v. LTV Corp. (In re Chateaugay Corp.)*, 944 F.2d 997, 1004-05 (2d Cir. 1991).[21]

---

[20] In a more recent Missouri case (*In re Betancourt*, 582 B.R. 480, 484-85 (Bankr. W.D. Mo. 2018)), the court analyzed when a "right to payment arose" in the bankruptcy claim context by reviewing the conduct and the pre-petition relationship approach which is the Second Circuit test (and not the accrued state law claim approach urged by Gillispie) because "those are the ones most commonly adopted."  *Id.* at 484-85; *see also In re Food Barn Stores, Inc.*, 175 B.R. 723, 731 (Bankr. W.D. Mo. 1994) ("This Court declines to follow *Frenville* and agrees that to 'follow *Frenville* and apply state law would be to confuse a 'right to payment' for federal bankruptcy purposes with the accrual of a cause of action for state law purposes.'" (citation omitted)).

[21] Gillispie's reliance on *In re Grumman Olson Indus., Inc.*, 467 B.R. 694 (S.D.N.Y. 2012), is misplaced.  The *Grumman* case involved tort claims brought by a plaintiff that had **no** prepetition relationship with the debtor manufacturer, did not suffer an injury until after the section 363 sale, and had no reason to believe that the debtor's 363 sale might impact her rights.  This is the exact **opposite** of Gillispie's situation.

31

Here, the conviction in 1991 was the "triggering act" and the injury that gave rise to Gillispie's claims (which he was well aware of for many years prior to Old GM's bankruptcy filing).

## C.   <u>Gillispie Received Sufficient Notice of the 363 Sale</u>

Gillispie does not assert that he was unaware of Old GM's bankruptcy case.   In fact, Old GM's bankruptcy filing was anticipated and widely publicized.   This Court aptly summarized this point: "No sentient American is unaware of the travails of the automobile industry in general and of General Motors Corporation . . . in particular."   *In re Gen. Motors Corp.*, No. M 47(LAK), 2009 WL 2033079, at *1 (S.D.N.Y. July 9, 2009).

Gillispie has not asserted that he pursued any legal remedy against Old GM prior the 363 Sale.   As such, Gillispie was an unknown creditor to Old GM at the time of the 363 Sale and constructive notice by publication was sufficient under the circumstances of this case.   It is well-settled that when a creditor is "unknown" to the debtor, publication notice is adequate constructive notice to satisfy due process requirements because, "in the case of persons missing or unknown, employment of an indirect and even probably futile means of

notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights." *In re U.S.H. Corp. of N.Y.*, 223 B.R. 654, 658 (Bankr. S.D.N.Y. 1998) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)); *see also City of N.Y. v. N.Y. N.H. & H.R. Co.*, 344 U.S. 293, 296 (1953) (concluding publication of the bar claims date satisfies requirements of due process with respect to providing notice to unknown creditors); *In re XO Commc'ns, Inc.,* 301 B.R. 782, 792–93 (Bankr. S.D.N.Y. 2003) (same); *In re U.S.H. Corp.,* 223 B.R. at 658 (holding publication notice "more than sufficient to satisfy due process requirements" and that if plaintiffs were "'unknown' creditors at the time of the Bar Order," their claims are barred) (collecting cases)); *In re Gen. Motors Corp.*, 407 B.R. 463, 494 (Bankr. S.D.N.Y. 2009) ("Notice was extensively given, and it complied with all applicable rules."); SA-0820-21 (Sale Order, ¶ 6 ("This Order and the [Sale Agreement] shall be binding in all respects upon the Debtors, their affiliates, ***all known and unknown creditors*** of . . . the Debtors . . . .")); SA-0803 (Sale Order, ¶ E ("With respect to parties who may have claims against the Debtors, but whose identities are not reasonably ascertainable by the Debtors . . . the Publication Notice was

33

sufficient and reasonably calculated under the circumstances to reach such parties.")).

Gillispie was put on notice that his interests could be affected by the 363 Sale at the time.  As the bankruptcy court appropriately held:

> As an unknown creditor, notice by publication was constitutionally sufficient, and Old GM did publish notice of the hearing of the Sale and of the Claim Bar Date in a number of global, national, and local newspapers.  Gillispie thus has no basis to argue that as a result of a due process violation because of inadequate notice, he is not bound by the free and clear provisions of the Sale Order.

*Motors Liquidation Co.*, 576 B.R. at 776.  This ruling should be affirmed in its entirety.

34

## CONCLUSION

For the reasons set forth above and in the October 2017 Opinion, this Court should affirm the bankruptcy court's decision in its entirety.

Respectfully submitted,

KING & SPALDING LLP

*/s/ Arthur Steinberg*
Arthur Steinberg
Scott Davidson
King & Spalding LLP
1185 Avenue of the Americas
New York, New York  10036
Telephone: (212) 556-2100
Facsimile: (212) 556-2222

*Counsel for General Motors LLC*

July 30, 2018

35

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Bankruptcy Procedure 8015, I certify that this brief complies with the length limitations set forth in that Rule because it contains 7,327 words, as counted by Microsoft Word, excluding the items that may be excluded.

I further certify that this Brief was filed in electronic format through the Court's CM/ECF system on the 30th day of July, 2018.

/s/ Arthur Steinberg
*Counsel for General Motors LLC*

## CERTIFICATE OF SERVICE

I certify that on July 30, 2018, I served the foregoing Brief of Appellee, General Motors LLC upon all counsel of record by and through the Court's CM/ECF system.

/s/ Arthur Steinberg
*Counsel for General Motors LLC*